**ALTERMAN TRANSPORT LINES, INC., et al.,**

v.

**PUBLIC SERVICE COMMISSION OF TENNESSEE et al.**

**Civ. A. No. 4417.**

United States District Court
M. D. Tennessee,
Nashville Division.

Oct. 10, 1966.

David S. Cordish, Cordish & Cordish, Baltimore, Md., and J. G. Lackey, Jr., Stephenson, Lackey & Holman, Nashville, Tenn., for plaintiffs.

Milton P. Rice, Asst. Atty. Gen., State of Tennessee, and Eugene W. Ward, Gen. Counsel, Public Service Commission, Nashville, Tenn., for Public Service Commission and State Board of Equalization.

Seymour Samuels, Jr., Dept. of Law, Nashville, Tenn., for Metropolitan Government of Nashville and Davidson County.

William H. Williams, Shelby County Atty., Memphis, Tenn., for Shelby County.

Patrick Johnson, Sr., and William W. O'Hearn, Memphis, Tenn., for the City of Memphis.

Earl S. Ailor, Knox County Legal Dept., Knoxville, Tenn., for Knox County.

W. P. Boone Dougherty, Deputy Director of Law, Knoxville, Tenn., for City of Knoxville.

James F. Turner, Chattanooga, Tenn., for Hamilton County.

Eugene N. Collins, City Atty., and Ellis K. Meacham, Deputy City Atty., Chattanooga, Tenn., for City of Chattanooga.

Before HARRY PHILLIPS, Circuit Judge, and WILLIAM E. MILLER and FRANK GRAY, Jr., District Judges.

WILLIAM E. MILLER, District Judge.

Plaintiffs are corporations engaged in the business of transportation of goods by motor carrier in interstate commerce. In the conduct of such business, their trucks travel within the state of Tennessee. Plaintiffs' action names as defendants the Public Service Commission of Tennessee, the State Board of Equalization, and specified municipalities and counties as representatives of all the municipalities and counties of the state. The chief purpose of the action is to contest the validity of the taxing statutes, Tenn.Code Ann. §§ 67–901 to 67–934, under which plaintiffs presently are subject to yearly ad valorem taxes. As the plaintiffs seek an injunction restraining the enforcement of the statutes on the ground of unconstitutionality, a three-judge court was constituted pursuant to 28 U.S.C.A. § 2281.

Under the Tennessee taxing statutes, plaintiffs are classified as "irregular route motor carriers." [1] Such carriers are required to submit to the Public Service Commission, the state agency charged with the responsibility of assessing utility property, specified information including the number of miles traveled each year both within and without Tennessee.[2] Penalties may be invoked by the Commission for failure to comply with these reporting procedures. Ad valorem taxes on carriers are payable to the various counties and municipalities through which "irregular route carrier" trucks pass, determined in accordance with local rates of taxation.

---

1. "Irregular route motor carriers" are defined as those carriers which are not limited by their permits, certificates or other operating authority from the Tennessee Public Service Commission to any particular highway or highways, road or roads, and/or specific route or routes. Tenn. Code Ann. § 67–901.

2. Plaintiffs here complain of the statutes with respect to "distributable property" which for motor carriers includes "franchises, choses in action, intangible property, and personal property within the state [of Tennessee], but having no actual situs therein," and the movable property of such carriers. Tenn.Code Ann. § 67–920.

The Tennessee Board of Equalization, after assessments have been made by the Public Service Commission, and by the various local assessing authorities for non-utility property, has the responsibility of equalizing the various assessments according to the terms of the Tennessee Constitution which provides that all property shall be assessed at actual cash value. In the case of utility property, the Board certifies the equalized assessment back to the Commission which then certifies to each local taxing authority the value of taxable property to be considered within the local jurisdiction. The distributable property of irregular route carriers in Tennessee is allocated to local taxing authorities on a proportional basis according to the ratio of mileage traveled within the local jurisdiction to the total mileage traveled by the carrier in the state. This is the system of taxation which plaintiffs now challenge.

Basically, plaintiffs' position is that the Tennessee statutes under which they are taxed are unconstitutional for the reason that the property so taxed has not been within the state long enough to acquire a tax situs. The statutes are also said to be unconstitutional in their application under the recent ruling in Louisville & Nashville R.R. Co. v. Public Service Commission, 249 F.Supp. 894 (M.D.Tenn.1966), since property assessed by the Public Service Commission is systematically assessed at a much higher rate than that assessed by local authorities. For relief, plaintiffs have requested an injunction against enforcement of the statutes on grounds of unconstitutionality, an injunction against the Commission and Board of Equalization prohibiting them from certifying, making, or distributing assessments against plaintiffs under these statutes, a declaration that assessments already made are void, recovery of all monies paid under the statutes, and a declaration of rights under 28 U.S.C.A. § 2201. Defendants have interposed motions to dismiss and for summary judgment upon which this action was heard April 28, 1966. At that time hearing was also held on plaintiffs' application for a temporary injunction. Defendants have based their motions largely on the grounds of lack of federal jurisdiction.

Plaintiffs have sought to invoke the jurisdiction of this Court on many and varied grounds. They have alleged that jurisdiction exists because of diversity of citizenship, the presence of a federal question, the fact that the action arises under an Act of Congress regulating Commerce as contemplated by 28 U.S.C.A. § 1337, and the fact that the practices complained of are violations of plaintiffs' rights under the Civil Rights Act, 28 U.S.C.A. § 1343(3). Plaintiffs characterize the action as a class action under Rule 23.

Under 28 U.S.C.A. § 1337, district courts have jurisdiction of actions arising under Acts of Congress regulating Commerce. Plaintiffs allege that this action arises under such an Act since compliance with the Tennessee statute is claimed to involve violations of various portions of the Code of Federal Regulations relating to highway safety as provided for in the Interstate Commerce Act of 1940. 54 Stat. 899 (1940). They allege that to comply with the reporting provisions of the Tennessee statutes as to mileage traveled they have been compelled to stop their trucks in the middle of the night on lonely roads to search for boundary markers between the cities and counties of the state. This, it is alleged, results in the trucks constituting a menace to safety and the drivers often violating federal safety standards since it would not be practical to take the time to comply with all of the federal regulations relating to stops along the highways. Plaintiffs thus contend that the statutes constitute an unconstitutional burden on interstate commerce.

Despite plaintiffs' allegations that they are violating provisions of various Interstate Commerce Acts, it does not appear that they are forced to do so by the statutes in question. In addition, no restriction on interstate

commerce appears as a necessary effect of the statutes. The Tennessee statutes require that motor carriers report the number of miles traveled within each of the local political subdivisions of the state. There is no provision as to how this should be accomplished. The method of compliance allegedly chosen by plaintiffs cannot be deemed a result of the challenged statutes unless it is demonstrated that this method is the only practical way that the required reporting may be accomplished. An allegation to this effect, conclusory in character, will not suffice to constitute a basis for jurisdiction, particularly if it appears to be unreasonable on its face. Since in normal travel it must be presumed that motor carriers use established routes and do not travel at random, the reason for frequent and repetitive stops to determine local boundary lines cannot be perceived. There is, furthermore, no allegation to the effect that the Public Service Commission requires such accurate reporting as would necessitate roadside measurements.[3] The controlling factor is not the conduct or action of the plaintiffs but the requirements or exactions of the defendants imposed in compliance with the statutes. Where it is not fairly demonstrated that the actions of the defendants were taken under compulsion or pursuant to the mandate of the statutes, this Court must hold that there is no basis for jurisdiction under 28 U.S.C.A. § 1337.

■ Certain restrictions upon a federal court are applicable when it is asked to enjoin the enforcement of a state taxing statute. For example, federal courts are prohibited from enjoining the enforcement of such statutes where there is a plain, speedy and efficient remedy in the state courts. 28 U.S.C.A. § 1341. As to one basis for this action; that of lack of situs, the Tennessee courts have demonstrated that adequate state remedies exist to challenge on this ground the validity of the statutes or any assessments made pursuant to them.[4] Howard Sober, Inc. v. Clement, 52 Tenn.App. 115, 372 S.W.2d 202 (1960); Jack Cole Co. v. Ellington, 52 Tenn.App. 120, 372 S.W.2d 204 (1961); E & L Trans. Co. v. Ellington, 212 Tenn. 671, 371 S.W.2d 456 (1963). Were this the only ground for plaintiffs' action, this Court would be required to hold that it was precluded from exercising jurisdiction. As to the adequacy of state remedies, the case here is distinguishable from Louisville & Nashville R.R. Co. v. Public Service Commission, supra. In that case it was pointed out on the basis of a number of rulings of the Supreme Court of Tennessee that before a taxpayer could complain that his own property was assessed at a higher valuation than the property of his neighbor, in violation of the uniformity requirement of the state constitution, he must be able to allege and show that his own property was assessed at more than its actual cash value. This roadblock was one which cut across all procedural avenues—whether a suit for tax refund after payment under protest, an application to the courts to review by certiorari the findings of the Equalization Board, or a suit in equity

---

3. It is noteworthy that many of the plaintiffs have not reported any mileage at all, so that their contentions seeking to establish jurisdiction in this regard must fail for that reason alone.

4. In addition, the Tennessee statutes provide that any utility aggrieved by the assessment of the Public Service Commission and fixed and certified by the Board of Equalization "shall be required to pay the taxes due and owing the state, the counties and municipalities, upon the full value of said assessment, under protest, and upon termination of any proceedings that may be instituted in any of the courts of this state or in any of the courts of the United States of America by such railroad or public utility to review such assessment, the state, the counties and municipalities, and any school district, road district, or other taxing district to which such taxes have been paid, shall refund in cash and with interest, such part of the taxes so paid to them as may be adjudged to be excessive or illegal by any final decree or order entered in any such proceeding." Tenn.Code Ann. § 67–929.

to enjoin the challenged assessment as the basis for local taxes—effectively barring access to either of them. No such barrier exists when a taxpayer is complaining that the state is without power to impose the challenged tax or assessment for lack of a tax situs.

■ Since there is an adequate state remedy with respect to situs, we next consider the question of equal protection raised by plaintiffs' assertion that utility property is systematically assessed on the basis of higher assessments than non-utility property, in violation of the state constitution. Such a contention presents a federal question within the terms of 28 U.S.C.A. § 1331. A federal court will not consider all actions involving a federal question, however, since Congress has remitted some cases in this category to the state courts with ultimate review by the Supreme Court of the United States. The determinative factor is the presence or absence of the required jurisdictional amount.

As stated, plaintiffs have characterized the action as a class action with the named defendants acting as representatives for all the municipalities and counties of Tennessee. They further contend that the amount in controversy for each plaintiff must be computed by aggregating the tax liabilities owed and paid to all such defendants. To support their theory that aggregation should be permitted, plaintiffs allege that defendants have conspired and acted in concert to deprive them of their rights.

Although the Tennessee Constitution requires that all property be assessed at actual cash value, the various counties and municipalities of Tennessee have been in the habit of establishing assessment rates which are considerably less than 100% of actual value. These assessment rates vary from county to county but apparently no county assesses property at over 50% of actual value. The Public Service Commission, on the other hand, assesses property at much higher rates, approaching in some cases 100% of actual value. A difference thus appears between the treatment of utility and non-utility property. Cf. Louisville & Nashville RR. Co. v. Public Service Commission, supra. Yet this fact alone is hardly sufficient to warrant the inference of a conspiracy, even assuming that the existence of such a conspiracy would be legally sufficient to justify an aggregation of claims for jurisdictional purposes. In fact, each of the local taxing authorities has an assessment rate as to non-utility property which is generally different from those of the other taxing authorities. The only common factor is that each of the rates is less than 100%. Mere allegations of general similarity in action do not support the theory that a conspiracy is present. We conclude that to determine whether the jurisdictional amount is present the Court must consider the amount in controversy between each plaintiff and each defendant separately.

■ Plaintiffs have urged the Court to consider the cost of compliance with the statutes in determining the amount in controversy. Since the statutes require the filling out of various forms, plaintiffs contend that the statutes should be considered as regulatory so that the cost of compliance would be the amount in controversy. The mere fact that the statute requires the completion of forms even if no tax may be due does not, however, change the essential nature of the statute as a tax measure. The regulations complained of by plaintiffs are clearly incidental to the taxing aspect of the statute and the amount in controversy is therefore the value of the tax and not the cost of compliance with the statute.

■ As to the defendant municipalities and counties there is a lack of the requisite jurisdictional amount between any one plaintiff and any one defendant insofar as the amount of taxes owing or paid is concerned. The only apparent exception is the case of the plaintiff Commercial Carrier Corporation and defendant Shelby County. But since neither of these parties resides within this district, there would be a lack of juris-

diction of this claim, standing alone, under the venue statute, 28 U.S.C.A. § 1391.

■ The Civil Rights Act, 28 U.S.C.A. § 1343, remains as the only possibility for a proper exercise of jurisdiction by a federal court of the claims against the defendant municipalities and counties. This statute provides that district courts shall have original jurisdiction to redress the deprivation, under color of any state law, of any rights, privileges or immunities secured by the Constitution of the United States. Plaintiffs' contention in this respect is that they have been excluded from the class of property owners to which they rightfully belong since they are treated differently from ordinary property owners in Tennessee. This position is advanced because the Civil Rights Act contains no restriction as to the amount in controversy. The Act, however, may be thought of as a remedy in cases where the right asserted is incapable of pecuniary valuation. Detroit Edison Co. v. East China Township School Dist., 247 F.Supp. 296 (E.D.Mich.1965). Generally, jurisdiction under this Act cannot be invoked in a pure tax action. A mere allegation of discrimination is insufficient to invoke Civil Rights Act jurisdiction automatically. Where plaintiffs' remedies are of the sort classically associated with tax actions and the claims are of a property nature, a federal court should not accept jurisdiction solely on this basis. Cf. Olan Mills, Inc. of Tenn. v. Opelika, Alabama, 207 F.Supp. 332 (M.D.Ala.1962). Otherwise, the jurisdictional amount provisions of 28 U.S.C.A. §§ 1331 and 1332 could easily be circumvented by a mere allegation of denial of equal protection. This would be true even if the amount in controversy were readily ascertainable. Equal protection in tax actions may constitute a federal question but it does not necessarily involve a corresponding Civil Rights Act violation. Plaintiffs seek further to support their position by noting that the practices of which they complain are of a long-standing nature. While this may be a necessary factor in

actions under the section in question, presence of such allegations will not, ex proprio vigore, invoke such jurisdiction in what is basically a tax case.

■ The Court, then, is prohibited from granting the requested relief with regard to the defendant municipalities and counties for the reason that it lacks jurisdiction to do so. As to the remaining defendants, the Public Service Commission and the Board of Equalization, jurisdiction is lacking under 28 U.S.C.A. §§ 1337 and 1343 for reasons already indicated. Insofar as jurisdiction is invoked upon equal protection grounds, plaintiffs are again met by an inability to establish the existence of the requisite jurisdictional amount. Since assessments are made by the Public Service Commission every two years, the Commission does not at present have any control over the subject matter of the action, the principal assessments having been certified to the local taxing authorities. Plaintiffs allege that supplemental assessments are made by the Commission and that such assessments are at present under the control of the Commission. Not only is there a failure to show the amount of these assessments, but perhaps of greater significance is the fact that the assessments are still in the administrative process. They have not been finally equalized or determined, and we must consider that plaintiffs' allegations with respect to them are premature. A federal court will not undertake to determine by injunctive process or otherwise the future course of state administrative proceedings since it cannot be assumed that state agencies will act unlawfully.

■ The Tennessee statutes provide that failure to comply with the reporting procedures of the taxing statutes makes an offending party liable to a penalty in the amount of $100 a day for each day that the necessary forms are not filed. These penalties are not automatic, being enforceable only upon the request of the Public Service Commission. Tenn.Code Ann. § 67–914. Several of the plaintiffs would be liable for large sums under this

statute if the penalties were invoked against them. Accordingly they have suggested that the Court should take such penalties into account in determining whether the jurisdictional amount requirement has been satisfied. In our view the possibility that such penalties may be invoked is of such speculative nature insofar as the actual controversy between the parties is concerned that it will not support an action in which the jurisdictional amount is required.

In summary, we hold that the motions to dismiss on behalf of all the named defendants should be sustained for the reason that plaintiffs have failed to demonstrate sufficient facts upon which a federal court should assume jurisdiction. As to the defendant counties and municipalities, plaintiffs do not allege that the jurisdictional amount is present as to each defendant. Similarly, as to the Public Service Commission and the Equalization Board, the Court holds that the amount in controversy between plaintiffs and defendants has not been shown to exceed $10,000 since these defendants have already performed their functions with regard to the subject matter of the controversy and no longer have control over it. The Court will not undertake to enjoin assessments that may be made in the future since it cannot be assumed that they will be made in a discriminatory manner condemned by this Court in the recent decision in Louisville & Nashville RR. Co. v. Public Service Commission, supra.[5] For reasons indicated plaintiffs cannot properly bring this action under the terms of 28 U.S.C.A. § 1337 or § 1343. Further, the Court is precluded from granting a declaratory judgment both because of the absence of jurisdictional amount and the presence of an adequate state remedy with respect to the issue of situs. Cf.

Wyandotte Chemical Corp. v. City of Wyandotte, 321 F.2d 927 (6th Cir. 1963).

An order will be entered implementing this opinion, sustaining the defendants' motions to dismiss, and denying the relief sought by the plaintiffs.

---

5. Only as to supplemental assessments do the plaintiffs allege a case approaching the situation confronting the Court in Louisville & Nashville RR. Co. v. Public Service Commission. In that case the jurisdictional amount was clearly present and the assessments were within the control of the Public Service Commission and Equalization Board. Here, however, the principal assessments have been certified back to local taxing authorities and the supplemental assessments are still involved in the administrative process, the outcome of which the Court cannot anticipate.