**J. W. WALKER et al.**

v.

**CITY OF HOUSTON et al.**

**Civ. A. No. 69 H 168.**

United States District Court,
S. D. Texas,
Houston Division.

Dec. 13, 1971.

As Amended May 4, 1972.

Kermitt L. Waters, Sam Wilson, Houston, Tex., for plaintiffs.

F. William Colburn, Houston, Harvey L. Hardy, San Antonio, Ted P. MacMaster, Dallas, Tex., Malcolm L. Quick, Asst. Atty. Gen. of Texas, Austin, Tex., Wade Adkins, El Paso, for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

The three-judge court impaneled in this case pursuant to Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968), held that this case does not present issues of the sort that must be heard and determined by the special three-judge court. The panel was therefore dissolved and the case remanded to this single-judge court. It must now be determined whether plaintiffs have invoked federal jurisdiction for this single-judge court.

■ This court has determined that it does have full jurisdiction over the parties and the subject matter of this action. Although, as suggested in Warner v. Bd. of Trustees, 277 F.Supp. 736 (E.D.La.1967), the case of Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L. Ed. 426, will probably be persuasive in deciding the merits of plaintiffs' due process allegations, the merits of this constitutional question are not so well settled as to cause it to be insubstantial. Nor do prior decisions preclude litigation of plaintiffs' other constitutional allegations. In fact, it appears that plaintiffs' equal protection issue and other constitutional arguments have never before been litigated in an analagous federal case. None of these constitutional issues are rendered insubstantial by an obvious lack of merit.

Jurisdiction in this case must be based upon either the "civil rights" provisions of 28 U.S.C. § 1343(3), where no amount in controversy is required, or the "federal question" jurisdiction of 28 U.S.C. § 1331, where there must be in excess of $10,000 in controversy. The plaintiffs have alleged that jurisdiction may be founded upon either of these statutes. The defendants argue: (1) this can only constitute a § 1331 case, assuming there exists a substantial federal question, and not a civil rights action under § 1343; (2) the claims of the plaintiffs are several and may not be aggregated to meet the jurisdictional amount of prerequisite of § 1331; and (3) no individual plaintiff has satisfied the amount in controversy requirement of § 1331.

Even if jurisdiction could only be founded upon § 1331, the jurisdictional amount prerequisite of that statute would be met. In addition to alleging that the aggregated claims of the plaintiffs far exceed the jurisdictional amount, plaintiffs also have alleged in their complaint that "some of the plaintiffs . . . in and of themselves, individually have an amount or value in controversy, in excess of $10,000, exclusive of interest and costs." The plaintiffs' pleadings and an affidavit of plaintiffs' attorney indicate that there is a substantial claim by one or more of the plaintiffs, individually, for sums satisfying the amount in controversy requirement. These claims appear to be asserted in good faith. It does not appear to a legal certainty that none of these separate claims are for less than $10,000. Thus, in these circumstances, if only § 1331 were applicable, objections based upon the $10,000 requirement of § 1331 would be overruled. But the court has concluded that § 1343 applies here, so the $10,000 requirement of § 1331 is irrelevant.

The Civil Rights Act of 1871, the predecessor of 28 U.S.C. § 1343(3) created a civil action against any person "who, under color of any law . . . of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States . . . ." Ch. 22, § 1, 17 Stat. 13. Through the gradual incorporation of the Bill of Rights into the fourteenth amendment, the substantive provisions of the Act of 1871 have come to impose civil liability for the deprivation under color of state law of a large variety of rights and privileges. As noted earlier, no minimum amount in controversy has ever been required under the jurisdictional provisions for this "civil rights" action. By an Act in 1875, the predecessor of § 1331, Congress extended jurisdiction to

"all suits of a civil nature at common law or in equity . . . arising under the Constitution or laws of the United States". Unlike in the 1871 Act, Congress required that there be a minimum amount in controversy in these cases. Because of the broad language of § 1331, the two statutes would appear to substantially overlap. There has never been a Congressional attempt to delimit the type of cases "secured by" the Constitution within the meaning of § 1343 and those "arising under" the Constitution within the meaning of § 1331.

In Hague v. C.I.O., 307 U.S. 496, 59 S. Ct. 954, 83 L.Ed. 1423 (1939), Justice Stone attempted to reconcile the apparent conflict between these sections as to the jurisdictional amount requirement of § 1331. He was convinced that Congress in 1875 had not intended to withdraw from the courts the jurisdiction it had granted them in 1871. Justice Stone felt that since the 1871 statute was not repealed, Congress intended that suit would be brought under the 1871 statute, the predecessor to § 1343(3) after, as well as before, the enactment of the 1875 statute. Concluding then that the "civil rights" and "federal question" statutes were not meant to be coextensive, Justice Stone reasoned:

> By treating [section 1343] as conferring federal jurisdiction of suits brought under the Act of 1871 in which the right asserted is inherently incapable of pecuniary valuation, we harmonize the two parallel provisions of the Judiciary Code, construe neither as superfluous, and give to each a scope in conformity with its history and manifest purpose.

Thus, birth was given to the rule that if a suit involves only a "property or monetary right" section 1331 applies, but if it involves a "right asserted is inherently incapable of pecuniary valuation" then section 1343 applies. Most courts have at least paid lip service to Stone's formulation. See, e. g. Holt v. Indiana Mfg. Co., 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374 (1900); Ream v. Handley,

359 F.2d 728 (7th Cir. 1966); Mc-Manigal v. Simon, 382 F.2d 408 (7th Cir. 1967); Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966); Alterman Transp. Lines, Inc. v. Public Serv. Comm'n, 259 F.Supp. 486, 492 (M.D.Tenn.1966) (three-judge court), aff'd per curiam 386 U.S. 262, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1963) (three-judge court), aff'd mem., 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963); Howard v. Higgins, 379 F.2d 227 (10th Cir. 1967); Fuller v. Volk, 351 F.2d 323 (3d Cir. 1965); Bussie v. Long, 383 F. 2d 766 (5th Cir. 1967); Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.1968). *Contra*, Joe Louis Milk Co. v. Hershey, 243 F.Supp. 351 (N.D.Ill.1965); but see, Glicker v. Mich. Liquor Control Comm'n, 160 F.2d 96 (6th Cir. 1947); Burt v. New York, 156 F.2d 791 (2d Cir. 1946); Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953).

By affirming two recent appeals challenging the validity of this "property rights" and "rights of personal liberty" distinction, the Supreme Court would appear to have at least tacitly approved Justice Stone's dictum in Hague v. C.I. O. In the earlier of these cases, Abernathy v. Carpenter, 208 F.Supp. 793 (W. D.Mo.1963) (three-judge court), aff'd mem., 373 U.S. 241, 83 S.Ct. 1295, 10 L. Ed.2d 409 (1963), the district court stated "[t]he distinction between the two statutes [28 U.S.C.A. §§ 1331 and 1343(3)] appears in the case of Hague v. C.I.O., * * * which this Court believes to be the correct interpretation." 208 F.Supp. at 794. The Court of Appeals for the Seventh Circuit in Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966), put the proposition in this manner, "[t]hus far, at least, it is quite clear that the courts have generally treated this statute [28 U.S.C.A. § 1343] as applicable to personal liberty rather than a property or monetary claim." In the second case, Alterman Transp. Lines, Inc. v. Public Serv. Comm'n, 259 F.Supp. 486, 492 (M.C.Tenn.1966) (three-judge court), aff'd per curiam, 386 U.S. 262,

87 S.Ct. 1023, 18 L.Ed.2d 39 (1967), the district court stated:

> The [Civil Rights] Act, however, may be thought of as a remedy in cases where the right asserted is incapable of pecuniary valuation. Detroit Edison Co. v. East China Township School Dist., 247 F.Supp. 296 (E.D. Mich.1965). Generally, jurisdiction under this Act cannot be invoked in a pure tax action. A mere allegation of discrimination is insufficient to invoke Civil Rights Act jurisdiction automatically. Where plaintiffs' remedies are of the sort classically associated with tax actions and the claims are of a property nature, a federal court should not accept jurisdiction solely on this basis. *Cf.* Olan Mills, Inc. of Tenn. v. Opelika, Alabama, 207 F.Supp. 332 (M.D.Ala.1962). Otherwise, the jurisdictional amount provisions of 28 U.S.C.A. §§ 1331 and 1332 could easily be circumvented by a mere allegation of denial of equal protection. This would be true even if the amount in controversy were readily ascertainable.

The apparent simplicity of Justice Stone's formula is deceiving, for beneath its orderly veneer lie serious deficiencies. Many cases involve both proprietary and personal interests and therefore do not fall neatly into one category or the other. One such instance is when a plaintiff seeks judicial protection of his right to be free from discriminatory hiring. Although such a case involves an alleged unconstitutional infringement of a right of personal liberty, it also involves rights capable of pecuniary valuation—*i. e.*, the right to earn and receive certain wages. See, Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915). In addition to cavalierly assuming that personal liberty and property rights are separable, Justice Stone's distinction suggests that personal liberty interests invariably deserve greater protection than interests of a proprietary nature. While this hypothesis may be true generally, it does not merit universal applicability—not because it overvalues interests of personal liberty, but because it ignores the fundamental importance of many proprietary interests, and the role these proprietary interests often play in the preservation of the personal liberty interests.

Without the economic security which proprietary rights provide, one's personal liberty is surely less secure. This is demonstrated in the case of the welfare recipient—or other poor person—where the loss of money or property affects one's right to be free from hunger, to be fully clothed, or adequately housed. It would be incongruous to argue that the loss of the means to provide these necessities, albeit less than the $10,000 value necessary for section 1331 jurisdiction, is any less valuable to some people than the loss of freedom of speech or the right to vote. This is not to place "property rights" above "personal rights" or vice versa, but only to recognize that Stone's distinction ignores the inseparability of property rights and personal rights and fails to recognize that to many people the deprivation of a property right worth only $1,000 is as important as the deprivation of a personal right "incapable of pecuniary valuation."

Civil Procedure: Section 1343(3) Jurisdiction and the Property—Personal Right Distinction, 1970 Duke L.Rev. 819, 832–33.

■ Justice Stone's "property rights" exception was actually quite unnecessary. Nothing in the legislative history of the Civil Rights Acts, or in the circumstances surrounding their adoption indicate that they were meant not to apply where injury was only to property to where rights of personal liberty were not involved. To the contrary, it would appear that Congress intended that no distinction be made between the protection of proprietary and personal interests. See, Note, 1970 Duke L.Rev. 819, 833–837. Nor is the rule needed to preserve the jurisdictional amount requirement of § 1331. If § 1343(3) is construed to apply to proprietary and per-

sonal liberty rights, § 1331 would not be rendered superfluous, because § 1343(3) applies only to rights infringed "under color of state law." Thus, in any federal question case not involving an infringement "under color of state law," the jurisdictional amount requirement of § 1331 would still be required, unless, of course, the cause of action were to fall under one of the many statutory exceptions to the $10,000 requirement.

In view of the foregoing, it is not surprising that the courts have largely ignored or circumvented the "property rights exception" from § 1343(3) in "mixed" causes of action involving both proprietary and personal interests. See, e. g., Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947) (the first of many liquor license cases); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (involving employment discrimination); Burt v. City of New York, 156 F.2d 791 (2d Cir. 1946) (involving the interference of an architect's right to earn a living); and King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (involving an attack upon a state welfare program's "substitute father" regulation).

Few cases have squarely faced the issue of whether Stone's property right exception is of any continuing validity. In one of these cases, Penn v. Stumpf, 308 F.Supp. 1238, 45 (N.D.Cal.1970), the court declared that it favored rejecting a strict "property-personal liberty" test. In an earlier case, Joe Louis Milk Co. v. Hershey, 243 F.Supp. 351 (N.D.Ill. 1965), the court stated that

> Neither logic nor policy compels the conclusion that property rights are less deserving of protection under the Constitution and Civil Rights Act than are human freedoms. It appears, under current statutory interpretation, that the right of an individual or a corporation not to be deprived of property without due process of law is a "right . . . secured by the Constitution" within the meaning of § 1343.

Tax cases represent the only class of litigation in which Stone's property-rights exception has been consistently applied, with but a few exceptions, to deny jurisdiction under § 1343(3). There would appear to be little reason for holding that the right to equal protection in tax cases constitutes any more of a "property right," or any less of a "personal liberty right" than the other cases involving liquor licenses, employment discrimination or right to welfare benefits. The reason may be that the claims in these tax cases are particularly susceptible of pecuniary valuation. It has been suggested that the explanation lies in the long-recognized policy favoring federal abstention in cases involving state taxation. 43 N.Y.L.Rev., supra at 1213–14. Perhaps this explains the Supreme Court's perpetuation of Stone's formulation by its affirmance in Abernathy, supra, and its decision in Alterman, supra, both of which were tax actions. If abstention is the underlying reason for the results in these tax cases, it should be the stated reason, rather than a rationale that has largely been discredited.

With the exception of tax cases, e. g., Bussie v. Long, 383 F.2d 766 (5th Cir. 1967), the Court of Appeals for the Fifth Circuit has ignored Stone's formulation and has found jurisdiction under § 1343 in cases involving both proprietary and personal interests. See, e. g., Hornsby v. Allen, 326 F.2d 605, reh. den., 330 F.2d 55 (5th Cir. 1964) (where plaintiff asserted that a city liquor license was arbitrarily denied); Barnes v. Merritt, 376 F.2d 8 (5th Cir. 1967) (plaintiff alleged discriminatory denial of a liquor license); McGuire v. Sadler, 337 F.2d 902 (5th Cir. 1964) (plaintiff asserted the unconstitutional impairment of contract in the sale of land); Blume v. City of Deland, 358 F.2d 698 (5th Cir. 1966) (plaintiff asserted that defendant appropriated his property without due process); Mansell v. Saunders, 372 F.2d 573 (5th Cir. 1967) (plaintiff asserted an equal protection argument in the de-

nial of a garbage collection franchise); Atlanta Bowling Center, Inc. v. Allen 389 F.2d 713 (5th Cir. 1968) (denial of a liquor license); and Hall v. Garson, 430 F.2d 430 (5th Cir. 1970) (the right to privacy and to be free from unreasonable searches and seizures was asserted in a contest of a Texas statute giving landlord a lien on tenant's personal goods and a right to peremptorily seize the property).

The Court of Appeals for the Fifth Circuit acknowledged in Bussie v. Long, supra, a tax case where it held § 1343 not applicable, that "[t]here is admittedly a fine line [of distinction]" between *Bussie* and the other cases also involving property rights where it had held § 1343 to be applicable. Later, in the *Atlanta Bowling Center* case, *supra,* the court admitted that the conflict existing between *Bussie* and its other decisions had not yet been resolved. Most recently, in Hall v. Garson, the Court of Appeals, acknowledging that it had "expressed doubts" about Stone's formulation in *Bussie* and *Atlanta Bowling Center,* expressly declined to pass on the scope of the 'property exemption' ". 430 F.2d at 438, footnote 19. The Fifth Circuit's reticence has been unfortunate, but its tacit repudiation of Stone's formulation is clear, nevertheless. The Court's decisions have been entirely consistent with this conclusion, with the exception of the tax case, Bussie v. Long, *supra.* But the precedent demanding the perpetuation of Stone's formulation in tax cases is particularly strong. *E. g.,* Abernathy v. Carpenter, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963), affirming per curiam, 208 F. Supp. 793 (W.D.Mo.1962). The long-recognized policy of abstaining in state tax matters, reflected by Congress in 28 U.S.C. § 1341, probably explains why Stone's formulation has been followed in these cases. An earlier argument was made that if this is the case, then, jurisdiction in state taxation cases should be expressly declined on grounds of abstention, and not on Stone's formulation. But even if Stone's rationale is to be perpetuated for these tax cases, it should not be applied to other cases where the reasons for abstention are not present.

■ For the reasons stated, the continuing validity of Stone's formulation is highly questionable. At the very least, in non-tax cases such as the present one, involving allegations of unconstitutional state infringement of personal liberties under the Fourteenth Amendment, § 1343 should apply, even though the case also involves proprietary interests which are capable of rather precise pecuniary valuation.

The defendants also urge the court to dismiss this case for failure of the plaintiffs to state a claim upon which relief can be granted. Defendants reason that if plaintiffs should prevail and obtain repayment of their contributions, the funds would be depleted, thereby depriving present members of their vested rights in the funds. Without evidence, we can only speculate as to what the effect of such a judgment would have on the financial well-being of these funds. After the case is heard, it may very well be that even if the evidence shows that plaintiffs are entitled to judgment, the evidence may also show that, in protecting the rights of all interested persons, the relief that can be granted to plaintiffs will be less than that being sought. If it is determined that employee-contributors do have rights of the sort claimed by plaintiffs in the employee contributions, then the judgment of the court must be tailored to not only protect these rights for the plaintiffs, representing ex-employee-contributors, but also to protect these rights for present member-contributors and those presently receiving benefits from the "funds". But it would be quite another matter to state that the rights of present member-contributors and recipients of benefits completely override the rights of all ex-member-contributors. The court does not share defendants' pessimistic notion that, even assuming plaintiffs otherwise would be entitled to recover, appropriate relief could not be fashioned.

■ The case is particularly well-suited for prosecution pursuant to the class-action provisions of Rule 23 of the Federal Rules of Civil Procedure.

All four of the necessary conditions of subdivision (a) of Rule 23 are met. The number of all prior members of each of the various funds is so great that it would be impracticable to attempt to join all of them. The constitutional issues raised with respect to each fund are common to all prior members of each fund. The prior members of each fund represent a distinct class and at least one member of each such class is a named party-plaintiff. The claims of the named party-plaintiffs are typical of the claims of their respective classes, and it appears that these plaintiffs, as representive parties, will fairly and adequately protect the interests of their class.

In addition to meeting all four of the conditions of subdivision (a), the conditions of subpart (1), (2) or (3) must also be met before an action may be maintained as a Rule 23 class action.

The (b) (1) type of class action is concerned with the prejudicial result that separate suits may have on the party opposing the class or to individual members of the class. An action may be brought under (b) (1) if, in addition to satisfying the four conditions set out in (a),

the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

As illustrations of (b) (1) (A), the Advisory Committee Note refers to suits to invalidate bond issues and suits to determine riparian rights and duties. The provision was designed to "obviate the actual or virtual dilemma which would . . . confront the party opposing the class" when incompatible adjudications would trap him in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another. In the present situation, independent adjudications could result in defendants being ordered to refund contributions to certain members of the class in some of the cases, and not being ordered to make refunds to other members of the class in other cases. These inconsistent judgments would cast a pall of uncertainty over the merits of the unlitigated claims for refunds. But these inconsistencies and uncertainties would not place defendants in a dilemma of the sort contemplated by (b) (1) (A), for the varying adjudications would not preclude compliance with the judgment in each case.

This case would appear to fall under the provisions of the (b) (1) (B) type class action. The defendants assert that if defendants are ordered to refund the contributions, the assets of the "funds" would be depleted. If the assets of the "funds" are insufficient to satisfy the claims of all of the members, then a type (b) (1) (B) class action would be appropriate to settle the validity of these claims as a whole, or in groups, followed by separate proof of the amount of each valid claim and proportionate distribution of the assets. The prejudicial impairment of the ability of individual members of the class to protect their interests in separate proceedings would thus be avoided.

Subdivision (b) (2) would appear to be inapplicable, as it is limited to actions where final injunctive or declaratory relief constitutes the exclusive or predominant purpose of the litigation. Where, as here, a money award is the predominant purpose of the litigation, (b) (2) does not apply. See, 3B Moore's

Federal Practice 23–708; 2 Fed.Prac. & Proc. § 562 (1969 supplement).

Any action maintainable under either (b) (1) or (b) (2) would also meet the less demanding requirements of (b) (3), where the only justification for the class action is the presence of common questions of law or fact. But the special procedural provisions of Rule 23 that apply to (b) (3) class actions should be followed only where neither (b) (1) or (b) (2) are applicable.

■ This court has concluded that there has been a misjoinder of both plaintiffs and defendants in this case. Rule 20, F.R.C.P., provides for the permissive joinder of parties in the following circumstances:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

The rule has been said to be based upon trial convenience and designed to permit the joinder of plaintiffs or defendants whenever there is a common question of law or fact and the right to relief arises out of a single transaction or occurrence or a series of transactions or occurrences. See, 3A Moore's Federal Practice Par. 20.02. Professor Wright urges that the "broadest possible reading" be given the permissive language of Rule 20(a) and suggests that a sensible approach would be to inquire whether "there are enough factual concurrences that it would be fair to the parties to litigate the matters at one time." Wright, Law of Federal Courts, 304 (1970). No doubt the rule is to be liberally construed, but, in the circumstances of the present case, to allow the plaintiffs and defendants connected with each pension fund to be joined with the plaintiffs and defendants connected with the other "pension funds" would require that "the same transaction, occurrence, or series of transactions or occurrences" limitation of Rule 20(a) be completely ignored. Obviously the refusal of the defendants connected with any one of the "funds" to refund employee-contributions to all ex-employees of that fund involves a "series of transactions or occurrences" within the meaning of Rule 20(a). But no reasonable or logical relationship exists between the inability of ex-employees to obtain their refunds and the inability of these ex-employees of other "funds" to obtain their refunds. Nor does the refusal of the defendants connected with one of these "funds" to refund contributions have any thing to do with the refusal of the defendants connected with the other funds to make such refunds as, the refusal with respect to each fund is based upon a different statutory provision. Ex-members of one "fund" have no cause of action against defendants responsible for any of the other funds. No unifying "transaction or occurrence" or "series" of same serves to unite the parties connected with any of these funds with any of the parties connected with the other "funds." The "common question" and "transaction or occurrence" provisions of Rule 20(a) are cumulative, so the similar questions involved with respect to each fund are insufficient, by themselves, to satisfy the prerequisites of the rule.

■ The plaintiffs and defendants concerned with each of the funds having been improperly joined, the provisions of Rule 21, F.R.C.P. become applicable.

Pursuant to Rule 21, the ex-members of each fund, the defendants connected with the operations of such fund and with the enforcement of the "no-refund" provision of each fund must be severed from the other plaintiffs and defendants.

■ The plaintiffs have sued the State of Texas through its Governor and its Attorney General. Plaintiffs also have sued the Court of Civil Appeals of the Fourth Judicial District in San Antonio, Texas, the Court of Civil Appeals of the Fifth Judicial District in Dallas, Texas, the Court of Civil Appeals of the Seventh Judicial District in Amarillo, Texas, the Court of Civil Appeals of the Eighth Judicial District in El Paso, Texas, the Court of Civil Appeals of the Tenth Judicial District in Waco, Texas, and the Court of Civil Appeals of the Eleventh Judicial District in Eastland, Texas, and the individual Judges of these Courts of Civil Appeals for the purpose of enjoining several Texas State Court judgments in which the "no-refund" provisions of the Dallas, San Antonio and El Paso funds have been upheld. The State of Texas will of course be required to participate in each of the actions, as severed, including the action against the statutes pursuant to which the two Houston "funds" were created. But the courts named as defendants and the judges of these courts, cannot be considered proper parties to any action other than the action or actions which involve the enforcement of the statutory provisions with which the judgments of these courts are concerned.

■ Venue in this Division of this District is appropriate only with respect to the class actions brought by the ex-members of the Police Officers Pension System of the City of Houston and the Firemen's Relief and Retirement Fund of the City of Houston against the defendants connected with the operation of either of these funds. These are the only "funds" that are located within the Southern District of Texas. The Houston police officers' fund is the only fund organized under Article 6243g–1 and the Houston firemen's fund is the only fund organized under Article 6243e. Each of the other funds were created under one of the other statutes under attack and each of these other funds exists and operates wholly within a District other than the Southern District of Texas. The returns of process show that the only defendants who reside within the Southern District of Texas are those who are involved in or connected with the operation of either the Police Officers Pension System of the City of Houston or the Firemen's Relief & Retirement Fund of the City of Houston. None of the named defendants who are alleged to be involved in or connected with the operation of any of the other "funds" reside within this District. Thus, the causes of action involving the funds other than the two "Houston funds" have not met the venue requirement of 28 U.S.C. § 1392(a) that at least one of the multiple defendants must reside in the District in which suit is brought. The residency of the defendants connected with either of the two Houston funds cannot be considered for the purposes of § 1392(a) as they were not properly joined with the other defendants.

28 U.S.C. § 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Pursuant to this statute, the class-actions against the improperly joined defendants will be transferred to the districts in which such actions could have been brought. Accordingly, the class-action that is stated against the defendants involved in or connected with the existence and/or operations of the Firemen, Policemen and Fire Alarm Operators' Pension Fund of Dallas, Texas will be transferred to the Northern District of Texas—the returns of process indicating that most of these defendants reside within that District; the class-action against the defendants involved in or connected with the existence and/or

operation of the Firemen and Policemen's Pension Fund of San Antonio, Texas will be transferred to the Western District of Texas—the returns of process indicating that most of these defendants reside within that District; and, finally, the class-action against the defendants involved in or connected with the existence and/or operation of the Firemen, Policemen and Fire Alarm Operators' Pension Fund of El Paso, Texas will be transferred to the Western District of Texas—the returns of process indicating that most of these defendants reside within that District.

If all the defendants had been properly joined venue would lie in this Division of this District, because of the residency of some of these defendants in this District and Division. Nevertheless, the same transfers of venue would still be in order pursuant to 28 U.S.C. § 1404. The Dallas "fund" exists and operates wholly within the Northern District of Texas and the San Antonio and El Paso funds exist and operate wholly within the Western District. The Houston Division of this District would be a most inconvenient forum for the witnesses and parties who will be involved in the litigation concerning the Dallas, San Antonio and El Paso funds, as they doubtlessly, in most cases, reside in far greater proximity to the cities in which these funds exist and operate. There is a general coalescence of legal issues relating to whether the attacked provisions of the statutes creating the "funds" here involved will withstand constitutional scrutiny. But this similarity is only superficial for the "no refund" provisions of these statutes are worded differently—one statute does not even contain a "no refund provision"—and the statutes were enacted independently of one another. The legislative purpose underlying the "no-refund" provision in each statute will be a separate issue of fact, and depending on the resolution of each such factual issue, it may be a separate question of law whether such a purpose and method of accomplishing the purpose are constitutionally justifiable. If plaintiffs do prevail on the constitutional issues with respect to a particular statute, it will then be necessary to determine each such plaintiff's contribution to the "fund" created pursuant to such statute. No doubt the defendants would wish to then assert individual defenses (waiver, limitations, estoppel, etc.) to each such claim. So even if the constitutional issues were sufficient to retain venue here for all facets of the case, it would be unreasonably burdensome to the parties and witnesses to retain venue for the latter part of these cases. Rather than engage in piece meal litigation in multiple forums, it would appear to be much more sensible to have the class-action against each of these funds to be commenced and concluded in the same forum.

With respect to the causes of action involving the two Houston funds, in which venue is being retained in this forum, the court will determine at a pretrial conference the manner and content of notification that shall be given to the members of plaintiffs' classes and other parties interested therein.

By reason of the foregoing, the court orders the following:

1) The defendants' motions to dismiss for lack of jurisdiction over the subject matter of this suit are denied;

2) The defendants' motions to dismiss for lack of sufficient process or service of process are denied;

3) The defendants' motions to dismiss for failure to state a claim upon which relief can be granted are denied;

4) With respect to defendants' objections to this suit being maintained as a class action, the causes of action against the defendants responsible for, or engaged in, the operation and administration of any one of the "funds" may be maintained as a class-action, but these actions against the "funds" may not be collectively prosecuted as one class-action;

5) The defendants' motions for change of venue are granted;

6) Counsel for the plaintiffs shall submit an appropriate order, approved as to form by all counsel of record, severing the causes of action, correcting the joinder of parties and transferring venue as directed by this Memorandum and Order.

The Clerk is directed to enter this Memorandum and Order and to provide counsel of record with true copies hereof.