Velma L. SEMBACH and Patricia L. McCormick, Individually and on behalf of the Shorthand Reporter Students Legal Action Group, Plaintiffs,

v.

McMAHON COLLEGE, INC.; Southwestern Savings Association; American Savings & Loan Association; North Side Bank; United States Commissioner of Education, Defendants.

Civ. A. No. 76–H–819.

United States District Court,
S. D. Texas,
Houston Division.

March 27, 1980.

W. Boone Vastine, II, Woodard, Hall & Primm, Houston, Tex., for plaintiffs.

Dennis M. Dylewski, Dyche & Wright, Houston, Tex., Thomas A. Fry, III, Cooper, Hayner, Miller, Long & Owen, Dallas, Tex., J. Michael Bell, Baker, Sharman & Wise, Craig Meredith, Schlanger, Cook, Cohn, Mills & Grossberg, James Dougherty, Asst. U. S. Atty., Houston, Tex., Jan Greenberg, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, Dallas, Tex., for defendants.

## MEMORANDUM AND ORDER

### INTRODUCTION

McDONALD, District Judge.

Presently pending before the Court is the plaintiffs' Motion for Class Certification. The plaintiffs seek to certify a class consisting of themselves and those individuals similarly situated who have agreed to contribute to the costs of bringing this suit. That class, they contend, is properly certifiable under Rule 23.2, Rule 23(b)(1)(A), and Rule 23(b)(2), Fed.R.Civ.P. Having carefully considered the facts, the law, and the arguments of the parties, the Court is convinced that certification of the class proposed by the plaintiffs would constitute an abuse of the class action process. Pursuant to the authority invested in the Court by Fed.R.Civ.P. 23(c)(1), this cause will be certified as a class action, but the class will be redefined to meet the requirements of Fed.R.Civ.P. 23(b)(2).

### FACTUAL BACKGROUND

The named plaintiffs, Velma L. Sembach and Patricia L. McCormick, attended court reporting courses at McMahon College in the spring of 1975. They financed their educations through loans obtained from the defendant lending institutions, paid directly to defendant McMahon College, and guaranteed by the defendant United States Commissioner of Education under 20 U.S.C. §§ 1071–1089, the federally insured student loan program. In April, 1975, the Commissioner of Education declared McMahon College ineligible for the receipt of federally insured student loans and the college closed its doors. It did not refund the plaintiffs' tuition. Even so, the defendant lending institutions have attempted to collect from the plaintiffs the balances due on their loans. The plaintiffs allege that all of the defendants were negligent in approving the loans in 1974—that they knew or should have known of the severe financial instability of McMahon College at that time—and that the defendant lending institutions are, therefore, barred from collecting on the loans. They seek to establish that, under 20 U.S.C. §§ 1071–1089, they and the class they represent are not obligated to repay the loans and cannot have adverse credit reports filed against them.

When McMahon College closed, a number of its students, including the plaintiffs, wanted to take legal action to clear up their financial status. They formed the Shorthand Reporter Students Legal Action Group (SRSLAG) and invited all McMahon College students to join. The sole purpose of this organization was to institute the present lawsuit. The only requirement for membership, other than enrollment at McMahon, was a willingness to pay the "dues" necessary to cover the legal fees and expenses involved in the suit.[1] Approximately 240 of the 450 students enrolled at McMahon College at the time of its closing joined SRSLAG. It is this group and only this group which the plaintiffs wish to represent. They seek to certify a class consisting of all members of SRSLAG.[2]

---

1. As of July 16, 1979, according to the *Response of Defendant U. S. Commissioner of Education to Plaintiffs' Motion for Class Certification* at 1, SRSLAG members had been assessed an "initiation fee of $50 each and a subsequent assessment of $50 each."

2. The defendants do not directly oppose the motion for class certification at this time. But,

## RULE 23.2

■ The plaintiffs first contend that the proposed class is properly certifiable under Fed.R.Civ.P. 23.2. That rule provides as follows:

An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 23(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in Rule 23(e).

By its terms, the plaintiffs maintain, Rule 23.2 allows the members of an unincorporated association to bring suit as a class without meeting the requirements usually applied to class actions under Fed.R.Civ.P. 23(a) and (b). All that is necessary for certification is that the plaintiffs "fairly and adequately protect the interests of the association and its members." Fed.R.Civ.P. 23.2. Since there is no dispute as to the adequacy of the plaintiffs' representation,

the proposed class must, the plaintiffs insist, be certified.

The question of whether the requirements of Rule 23(a) and (b) are applicable to actions under Rule 23.2 is a difficult one. The courts that have addressed it have divided. *Compare Rippey v. Denver United States National Bank*, 260 F.Supp. 704, 712–713 (D.Colo.1966) and *Suchem, Inc. v. Central Aguirre Sugar Co.*, 52 F.R.D. 348, 349, 355 (D.Puerto Rico 1971) (Rule 23 applicable) *with Gay Lib v. University of Missouri*, 416 F.Supp. 1350, 1360 (W.D.Mo.1976), *reversed on other grounds*, 558 F.2d 848 (8th Cir. 1977) (Rule 23 inapplicable) and *Management Television Systems, Inc. v. National Football League*, 52 F.R.D. 162, 163–164 (E.D.Pa.1971) (numerosity requirement inapplicable). *See also* 7A Wright & Miller, *Federal Practice and Procedure*: Civil § 1861, at 458 (1972) (hereinafter *Wright & Miller*), and 3B *Moore's Federal Practice* ¶¶ 23.2.01–23.2.02, at 23.2–2 through 23.2–9 (2d ed. 1979) (hereinafter *Moore's*) (Rule 23 Inapplicable).[3] This Court, however, need not reach that issue. It has concluded that Rule 23.2 was not intended to apply to organizations, like SRSLAG, which were formed after the events which created the cause of action occurred.

according to his filed response, the defendant United States Commissioner of Education does "have some questions about the propriety of the class defined as [SRSLAG]." The Commissioner of Education expects to settle this case and intends any settlement to apply to all students at McMahon College at the time of its closing, "regardless of their inclusion in the instant litigation." If settlement attempts prove fruitless, "it is requested that the Court be amenable to reconsideration of the scope of the class at that time." *Response of Defendant U. S. Commissioner of Education to Plaintiffs' Motion for Class Certification* at 1, 2.

The defendants' position, of course, does not eliminate the need for an evaluation of the plaintiffs' Motion for Class Certification. The Court is responsible for supervision of class action proceedings. *See* Fed.R.Civ.P. 23. It must make an independent determination as to whether the requirements of the class action rules have been met. Fed.R.Civ.P. 23(c)(1).

**3.** The language of Rule 23.2 and the Advisory Committee Note to it clearly imply that the requirements of Rule 23(a) and (b) do not ap-

ply. That implication comes into question, however, partly because the language also implies that Rule 23(c) does not apply to Rule 23.2 actions. Rule 23(c), it should be noted, provides, among other things, for the determination of class action maintainability, conditional certification, alteration and amendment of the certification order, partial class actions, and subclassing. Furthermore, as far as the Rule 23(a) prerequisites are concerned, the real issue boils down to whether the numerosity prerequisite must be met. *See Moore's, supra*, at 23.2–9, and *Management Television Systems, Inc., supra*, at 164. But numerosity had to be demonstrated under the original Fed.R. Civ.P. 23, *see* Note 5 *infra*, and it is undisputed that the adoption of Rule 23.2 was intended to continue without change the practice followed under that rule. *Wright & Miller, supra*, at 456; Cohen, *The New Federal Rules of Civil Procedure*, 54 Geo.L.J. 1204, 1227 (1966); Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356, 387 n. 119 (1967).

In order to properly interpret Rule 23.2, it is necessary to understand its historical background. At common law, an unincorporated association was not a legal entity. It could not be a formal party to a lawsuit and could only sue or be sued through joinder of all of its members.[4] 6 *Wright & Miller* § 1564, at 742, and cases cited therein. In 1922, however, the United States Supreme Court held in *United Mineworkers of America v. Coronado Coal Company*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922), that an unincorporated association could *be sued*, even if state and common law said otherwise, if the purpose of the suit was to enforce a substantive federal right against it. In 1938, the holding of that case was extended by the passage of the original Rule 17(b), Fed.R.Civ.P. That rule, which for our purposes has not changed, said that an unincorporated association could *sue*, as well as *be sued*, when the purpose of the suit was to enforce a substantive federal right. Rule 17(b) also said that, when no federal right was involved in the suit, the federal court should look to the law of the state in which it was sitting to determine the capacity of the unincorporated association to sue or be sued.

This solved the problem of unincorporated associations' access to federal courts where jurisdiction was based on the presence of a federal question, 28 U.S.C. § 1331, but left two problems where jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. First, some federal courts were still sitting in states which followed the common law rule. In diversity actions brought in these courts, unincorporated associations could still not be treated as legal entities and could neither sue nor be sued in

their own names. Second, unincorporated associations, for diversity purposes, have no citizenship of their own. *United Steelworkers of America, AFL–CIO v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889). The courts look to the citizenship of each of the unincorporated association's members to determine whether diversity jurisdiction exists. *Great Southern Fire Proof Hotel Company v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900). Since diversity jurisdiction does not exist unless there is complete diversity of citizenship, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), many unincorporated associations still could not sue or be sued in federal courts, even when they could sue and be sued in state courts.

The federal courts soon came upon a solution to these problems: the class action device. One or two members of the unincorporated association were named as representatives of a class consisting of all of the association's members and the class was certified as a "true class" under the original Fed.R.Civ.P. 23(a)(1).[5] *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen*, 148 F.2d 403 (4th Cir. 1945). *See also Calagaz v. Calhoon*, 309 F.2d 248, 251–252 (5th Cir. 1962). Through this device, the unincorporated association could essentially be treated as a jural entity, although it still could not be an official party to the suit. Furthermore, as the citizenship of a class is determined for diversity purposes by the citizenship of the class representatives, *Id.* at 253, an unincorporated association could get into federal court so long as any of its members had citizenship diverse from that of the opposing party.

---

**4.** The distinction could, at times, be crucial. First, *damages in a suit through joinder would* not be recoverable from the association's funds. It would only be recoverable from the funds of the individual association members, if the members were not judgment-proof. Second, as the development of class action proceedings indicate, joinder was often, as a practical matter, impossible.

**5.** The original Rule 23(a)(1), Fed.R.Civ.P., read as follows:

(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it.

In 1966, the Federal Rules of Civil Procedure were revised. Rule 23 was completely rewritten and Rule 23.2 was added. The latter's purpose was a simple one: to allow the practice followed prior to 1966 under the original Rule 23 to be conducted without change. *Wright & Miller* § 1861, at 456; Cohen, *The New Federal Rules of Civil procedure*, 54 Geo.L.J. 1204, 1227 (1966); Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356, 387 n. 119 (1967). Rule 23.2 was promulgated to permit unincorporated associations to continue to utilize the class action procedure to get into federal court in diversity cases. As the Advisory Committee Note to Rule 23.2 states:

> Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b).

In the present case, SRSLAG did not exist at the time the events which created the cause of action occurred. It was formed after those events took place, for the express purpose of instituting this suit. The problem with permitting such organizations to proceed under Rule 23.2 is an obvious one. Assume thirty individuals, twenty-nine of whom reside in Texas, have a cause of action against a Texas defendant under Texas state law. By forming an unincorporated association and naming the sole non-Texan as the class representative in an action under Rule 23.2, those individuals could successfully bring a diversity action in federal court, in spite of the complete diversity requirement of *Strawbridge v. Curtiss, supra.* To prevent wholesale evasion of the diversity requirement, the application of Rule 23.2 must be limited to unincorporated associations which exist when the events which form the basis of the cause of action occur. As SRSLAG is not such an association, the proposed class cannot be certified under Rule 23.2.

## RULE 23(b)(1)(A)

■ The plaintiffs' second argument is that certification of the proposed class is proper under Rule 23(b)(1)(A). That rule provides for certification when "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." The crucial phrase here is, "incompatible standards of conduct." Certification is proper under Rule 23(b)(1)(A) only when different judgments in individual cases would trap the defendant "in the escapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Walker v. City of Houston*, 341 F.Supp. 1124, 1131 (S.D.Tex.1971) (per Woodrow Seals, J.) As no such quagmire confronts the defendants here, the class is not properly certifiable under Rule 23(b)(1)(A).

## RULE 23(b)(2)

■ The plaintiffs' third proposed basis for certification is Rule 23(b)(2). That rule provides for certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The grounds upon which the defendants acted or refused to act are generally applicable to the proposed class. But they are also generally applicable to all students with federally insured student loans enrolled at McMahon College at the time of its closing. As "[t]he purpose of a class action is to enable the Court to determine the rights of a numerous class of individuals by one common final judgment," *Suchem, Inc. v. Central Aquirre Sugar Co.*, 52 F.R.D. 348, 353 (D.Puerto Rico 1971), "appropriate final injunctive relief or corresponding declaratory relief," Fed.R.Civ.P. 23(b)(2), would apply to all of those students, whether or not each was a member of the proposed class.

The plaintiffs argue that certification of a class consisting of all students with federally insured loans attending McMahon College at the time of its closing would be unfair in two respects. First, they say, certification of such a class would result in unjust enrichment to the students who refused to join SRSLAG. Those students, the plaintiffs submit, will get the benefit of the attorney's services without paying for it. It is true that non-members of SRSLAG will, in a sense, be enriched, but such enrichment of absent class members often occurs in class actions. At the same time, class actions preserve valuable judicial resources and often provide legal relief to those who otherwise might not receive it. The plaintiffs are upset with the students who refused to join SRSLAG, but this Court has a duty to consider other students as well. It is entirely possible that some students simply could not afford to join SRSLAG; they did not have the money. The true injustice would be the exclusion of those students from any class obtaining relief through the present case.

The second argument voiced against certification of a class which includes non-members of SRSLAG is that it will impose an unfair burden of notice on the plaintiffs. "Rule 23," of course, "contains no specific notice requirement for (b)(2) actions." *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 878 (5th Cir. 1974), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). Moreover, when only injunctive and declaratory relief is sought, the need for notice in Rule 23(b)(2) actions decreases. *Johnson v. General Motors Corp.*, 598 F.2d 432, 437 (5th Cir.), *rehearing denied*, 605 F.2d 554 (1979). The Fifth Circuit has recognized that, "In some cases it may be proper to delay notice until a more advanced stage of the litigation; for example, until after class-wide liability is proven." *Id.* at 438. In the present case, it appears that non-members of SRSLAG are aware that the issue of liability is being litigated. Although they may not be aware of their legal status in the instant case, that lack of knowledge will not, in practical terms, affect their status in the near future; the defendant United States Commissioner of Education has indicated that he intends to treat members and non-members of SRSLAG similarly, regardless of their inclusion in this lawsuit. *See* Note 2 *supra*. As this Court is convinced that the interests of the absent parties will be adequately protected,[6] it will not require notice under Rule 23(d)(2) at this time.[7]

## REDEFINITION OF THE CLASS

The Court, of course, has the power, as the plaintiffs concede, *Supplemental Memo of Points and Authorities in Support of Plaintiffs' Motion for Class Certification* at 3 (hereinafter *Plaintiffs' Supplemental Memo*), to redefine the class to bring it within the parameters of Rule 23. *Metropolitan Area Housing Alliance v. United States Department of Housing and Urban Development*, 69 F.R.D. 633, 638 n. 7 (N.D. Ill., E.D.1976); *Thomas v. Clarke*, 54 F.R.D. 245, 249 (D.Minn.1971); 7 *Wright & Miller*, § 1759 at 576, § 1760 at 582–583. "It is within the prerogative of the court to construct a definition of the class." *Metcalf v. Edelman*, 64 F.R.D. 407, 409 (N.D.Ill., E.D. 1974). The class proposed by the plaintiffs may be either limited, *see* 7 *Wright & Miller* § 1760, at 583 n. 98 (1972 & Supp.1979), or expanded. *See. Anderson v. Butz*, 428 F.Supp. 245, 247 (E.D.Cal.1975) (proposed local class expanded nationwide), *aff'd*, 550 F.2d 459 (9th Cir. 1977); *Otero v. New York City Housing Authority*, 344 F.Supp. 737, 747 (S.D.N.Y.1972) (proposed class of non-whites expanded to include certain whites). In addition, "redefinition may be undertaken . . . on the Court's initiative or upon the motion of a party." *Godbolt v. Hughes Tool Company*, 63 F.R.D. 370, 371 (S.D.Tex.1972) (per Carl O. Bue, J.).

---

6. While strongly seeking to have the proposed class certified, the plaintiffs and their counsel have in no way indicated an unwillingness to represent any class certified by the Court.

7. Notice of any settlement or dismissal will, of course, be necessary under Fed.R.Civ.P. 23(e), but it remains to be seen who will carry the burden of financing any such notice.

In the present case, the defendants have "acted or refused to act on grounds generally applicable to the class," Fed.R.Civ.P. 23(b)(2), consisting of "all students with loans obtained through the federally insured student loan program enrolled at McMahon College at the time of its closing." It is that class to which this action should properly extend and it is that class which the Court will certify under Rule 23(b)(2).[8] To do otherwise would be to disregard the purposes underlying Rule 23 and the Court's independent duty to monitor class actions under Rule 23(c)(1).

### CONCLUSION

The class proposed by the plaintiffs is actually, "all students with loans obtained through the federally insured student loan program enrolled at McMahon College at the time of its closing who are willing and able to pay for a lawyer." It is not a proper class under the Federal Rules of Civil Procedure. Classes are to be defined in terms of the issues in the case, not in terms of the willingness or ability of potential class members to pay attorneys' fees. Class actions are intended, among other things, to preserve judicial resources and to provide legal relief to those who otherwise might not receive it. Certification of the proposed class serves neither of those interests. Certification of the redefined class serves both.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that the plaintiffs' Motion for Class Certification be, and the same is, GRANTED WITH CLASS REDEFINED. The class shall consist of "all students with loans obtained through the federally insured student loan program enrolled at McMahon College at the time of its closing."

---

8. The plaintiffs have suggested that subclassing may prove necessary. *Plaintiffs' Supplemental Memo* at 6. Any need for subclassing or fur-ther redefinition of the class which arises will be dealt with at that time.