**Edwin T. McBIRNEY, et al., Plaintiffs,**

**v.**

**J.W. AUTREY, et al., Defendants.**

**Civ. A. No. CA 3–83–1161–G.**

United States District Court,
N.D. Texas,
Dallas Division.

May 31, 1985.

G.R. Poehner and Mark R. Hall, Moore & Peterson, Dallas, Tex., for plaintiffs.

Kleber C. Miller and Chris Groff, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for defendants.

### MEMORANDUM ORDER

FISH, District Judge.

#### I. *Introduction*

Plaintiffs have moved to certify a class of defendants. The proposed class would consist of the named defendants, as class representatives, and

> [t]hose persons defined as Sellers in the Stock Purchase Agreement dated October 15, 1982, as modified by the Stock Purchase Agreement Modification dated December 29, 1982, pursuant to which the plaintiffs purchased from the named individual defendants and class members capital stock of Sunbelt Savings Association of Texas.

For the reasons explained more completely below, the court is of the opinion that plaintiffs have not met their burden of showing that the requirements of Rule 23, Fed.R.Civ.P., are satisfied. The court is of the further opinion that plaintiffs pendent state claims should be dismissed without prejudice.

#### II. *Factual Background*

##### A. *Relationship Between Buyers, Sellers, and the Bank*

The plaintiffs bought stock in Sunbelt Savings Association of Texas ("Sunbelt") from 138 persons, who make up the proposed defendant class, under a stock purchase agreement dated October 15, 1982 ("the stock purchase agreement"). Defendant Stephenville Bank & Trust ("the bank"), a banking institution chartered under Texas law, agreed to act as the sellers' agent for the purpose of closing the stock purchase agreement. It also acted as escrow agent in collecting and disbursing the monetary consideration passing between the parties.

Under the escrow agreement, all parties agreed to indemnify the bank for losses and expenses resulting from any litigation in connection with the escrow agreement.[1]

---

**1.** The escrow agreement contained the following language:

> 7. *Escrow Agent.* All of the parties hereto agree that the following provisions shall control with respect to the rights, duties, liabilities, privileges and immunities of the Escrow Agent:
> (a) Escrow Agent is not a party to, and is not bound by or charged with notice of, any agreement out of which this Escrow Agreement may arise.
> (b) Escrow Agent is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of the subject matter of the Escrow Agreement or any part thereof, or for the identity or authority of any person executing or depositing it.
> (c) In the event Escrow Agent becomes involved in litigation in connection with this Escrow Agreement, Sellers and Purchasers, jointly and severally, agree to indemnify and save Escrow Agent harmless from all loss, cost and expenses including reasonable attor-

In addition, each defendant who sold his stock executed not only the stock purchase agreement but also a power of attorney naming the bank as his agent for purposes of consummating the stock sale.

All sales of Sunbelt stock under the stock purchase agreement were closed on or about December 29, 1982. As the agent of the defendant sellers at closing, the bank executed a certificate of compliance certifying that

> [t]he representations and warranties made by the Sellers in the Agreement were true, correct and accurate when made and are true, correct and accurate as of this date with the same force and effect as if such representations and warranties were made as of this date.

### B. *The Violations Alleged by Plaintiff Buyers*

The stock purchase agreement contained the following language on which the buyers base their claims:

> Each of the Sellers hereby jointly and severally represents and warrants to and covenants and agrees with the Purchasers that:
>
>     \*      \*      \*      \*      \*      \*
>
> *Section 3.03. Financial Statements.* The audited financial statement of Sunbelt as of March 31, 1982, and the audited statements of operations, stockholders' equity and changes in financial position for the fiscal year ended March 31, 1982, as certified by Peat, Marwick, Mitchell & Co., independent public accountants, under their report dated May 14, 1982, together with the notes thereto (true, complete and accurate copies of which have previously been delivered to the Purchasers) (the "Audited Statements"), fairly present the financial position of Sunbelt as of the respective dates thereof and the results of its operations for the periods indicated, in accordance with generally accepted accounting principles consistently applied. The unaudited financial statements of Sunbelt as of August 1, 1982, and the unaudited statements of operations and stockholders' equity as certified by the chief financial officer of Sunbelt (true, complete and accurate copies of which have previously been delivered to the Purchasers) (the "Unaudited Statements"), fairly present the financial position of Sunbelt as of the date thereof and the results of operations of Sunbelt for the periods then ended. As of the respective dates of such financial statements, Sunbelt did not have any fixed, contingent or other liability not set forth fully or reserved against as shown in the body of the respective Unaudited Statements, except those transactions identified on Exhibit "F".
>
> Since the date of the Unaudited Statements, Sunbelt has incurred no obligation or liability (fixed, contingent or

---

neys' fees, suffered or incurred by Escrow Agent as a result thereof, provided that this provision shall not apply with respect to any suit or claim against Escrow Agent arising out a breach hereof by Escrow Agent.

(d) Escrow Agent shall be protected in acting upon any written notice, request, waiver, consent, certificate, receipt, authorization, agreement, power of attorney, or other instrument which Escrow Agent in good faith believes to be genuine and what it purports to be.

(e) In the event of any disagreement between any of the parties to this Escrow Agreement, or between them or any of them and any other person, resulting in adverse claims or demands being made in connection with the subject matter of this Escrow Agreement, or in the event that Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, Escrow Agent shall not be or become liable in any way or to any person for its failure or refusal to act, and Escrow Agent shall be entitled to continue so to refrain from acting until (1) the rights of all parties shall have been fully and finally adjudicated by a court of competent jurisdiction, or (2) all differences shall have been adjusted and all doubt resolved by agreement among all of the interested persons, and Escrow Agent shall have been notified thereof in writing signed by all such persons. The rights of the Escrow Agent under this paragraph are cumulative of all other rights which it may have by law or otherwise.

otherwise) or entered into any transaction, other than obligations, liabilities or transactions entered into in the ordinary course of Sunbelt's business which are, individually or in the aggregate, material to the business, properties, financial condition or prospects of Sunbelt, except as set forth on Exhibit "F".

*Section 3.04. Loan Losses.* Except as reserved against in Audited Statements and the Unaudited Statements and disclosed on Exhibit "F", to the knowledge of Sellers, the loan portfolio of Sunbelt as of the date hereof in excess of such reserves and amounts disclosed is in all material respects collectible.

\* \* \* \* \* \*

*Section 3.14. No Material Omissions or Misstatements.* No representation, warranty, undertaking or agreement made, document delivered or statement made by any of the Sellers at any time in connection with this Agreement or the transactions contemplated hereby contained or will contain any untrue statement of a material fact, or omitted or will omit to state any material fact necessary in order to make the statements made herein not misleading.

Despite the reference to Exhibit "F," none was attached to the stock purchase agreement.

After the stock purchase agreement was signed but before the sale was closed, Sunbelt made certain loans to Southern Forge. The bank accepted the proceeds of these loans in repayment of a loan previously made by the bank to Southern Forge. The plaintiffs allege that the defendants failed to disclose these and other uncollectible loans in Sunbelt's portfolio prior to the closing.

These nondisclosures were material, claim the plaintiffs, (1) because Southern Forge was in severe financial distress at the time the loans were made and (2) because the plaintiffs had already obtained a price reduction on the stock as the result of previous disclosures concerning outstanding loans from Sunbelt to Southern Forge, so that the defendants knew the existence

of the loans was important to the plaintiffs. The plaintiffs contend that nondisclosure of the loans made between October 15, 1982 and December 29, 1982, together with nondisclosure of other uncollectible loans, constituted violations of the securities laws, fraud, and breach of the express warranties made by the defendants in the stock purchase agreement.

### III. *Requirements of Rule 23*

#### A. *General Principles*

The plaintiffs in this case seek to certify a defendant class. Certification of a defendant class, although unusual, is specifically authorized by Rule 23(a), which states that "[o]ne or more members of a class may ... be sued as representative parties on behalf of all ...." *See Kerney v. Fort Griffin Fandangle Association, Inc.,* 624 F.2d 717, 721 (5th Cir.1980); *In re Itel Securities Litigation,* 89 F.R.D. 104, 108 (N.D.Cal.1981).

■ Due process concerns not inherent in a plaintiff class action arise when a defendant class is to be certified. *Thillens, Inc. v. Community Currency Exchange Association,* 97 F.R.D. 668, 674 (N.D.Ill. 1983). These concerns arise because (1) the plaintiff initially selects the representative(s) of the defendant class, *Baker v. Wade,* 743 F.2d 236, 244 (5th Cir.1984), and (2) the representative thus selected is more often than not unwilling to undertake the representation. *In re Gap Stores Securities Litigation,* 79 F.R.D. 283, 290 (N.D. Cal.1978). These due process concerns, however, are necessarily resolved when the court determines, as a threshold matter, the adequacy of representation requirement of Rule 23(a)(4).

■ The burden of demonstrating that the requirements of Rule 23 have been satisfied rests on the party seeking to certify the class. *Fleming v. Travenol Laboratories, Inc.,* 707 F.2d 829, 832 (5th Cir. 1983); *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir.1975). He must show that all four prerequisites to a class action in Rule 23(a) have been met and that at least one

category under 23(b) has been satisfied. *See Horton v. Goose Creek Independent School District*, 690 F.2d 470, 483–84 and n. 25 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

Because the court believes that plaintiffs have failed to make the required showing under Rule 23(b), it is unnecessary to discuss whether the prerequisites in Rule 23(a) have been satisfied.

B. *Requirements of Rule 23(b)*

1. *Rule 23(b)(1)(A)*

Plaintiffs seek to certify a class on the basis of either Fed.R.Civ.P. 23(b)(1)(A) or (B). An action may be maintained as a class action under Rule 23(b)(1)(A) if the prerequisites of Rule 23(a) have been satisfied and

the prosecution of separate actions ... against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class ....

In essence, Rule 23(b)(1)(A) is concerned with the prejudicial effect which inconsistent judgments may have on the party opposing the class. *In re Itel*, 89 F.R.D. at 124; *Walker. v. City of Houston*, 341 F.Supp. 1124, 1131 (S.D.Tex.1971).

■ Generally, Rule 23(b)(1)(A) is satisfied only in the event that inconsistent judgments in separate suits would trap the party opposing the class "in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Walker*, 341 F.Supp. at 1131; *Sembach v. McMahon College, Inc.*, 86 F.R.D. 188, 192 (S.D.Texas 1980). *See also McDonnell Douglas Corporation v. United States District Court*, 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied sub nom. Flanagan v. McDonnell Douglas Corporation*, 425. U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *In re Itel*, 89 F.R.D. at 125; *but compare Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558, 561 n. 8 (S.D.Fla.1973) ("In light of the collateral estoppel effect that may ultimately attach to defendant's position, however, the Court finds that the spirit of Rule (b)(1)(A) is fulfilled in that a class action will 'provide a ready and fair means of achieving unitary adjudication' ").

■ No risk of inconsistency exists, however, where a defendant is liable for damages to one plaintiff but not to another, since paying one claimant is not inconsistent with not paying another claimant. *McDonnell Douglas Corporation*, 523 F.2d at 1086; *Walker*, 341 F.Supp. at 1131; *In re Itel*, 89 F.R.D. at 125; *In re Victor Technologies Securities Litigation*, 102 F.R.D. 53, 63–64 (N.D.Cal.1984); *Hudson v. Capital Management International, Inc.*, 565 F.Supp. 615, 633 (N.D.Cal.1983). *See also Sembach*, 86 F.R.D. at 192; *Pruitt v. Allied Chemical Corporation*, 85 F.R.D. 100, 106–07 (E.D.Va.1980).

■ Here, the plaintiffs constitute the parties opposing the class. The relief they seek is money damages. It is difficult to see how any plaintiff will be exposed to differing standards of conduct with respect to different defendants should each defendant be sued individually. A plaintiff may recover from one defendant and not from another, but that possibility does not place him in the position of complying with one judgment while violating another.

2. *Rule 23(b)(1)(B)*

An action may be maintained as a class action under Rule 23(b)(1)(B) if Rule 23(a) is satisfied and

the prosecution of separate actions ... against individual members of the class would create a risk of ... (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ....

Rule 23(b)(1)(B) focuses on the potential prejudice which separate adjudications may

have on absent class members. *Walker,* 341 F.Supp. at 1131; *In re Itel,* 89 F.R.D. at 124. The advisory committee notes that the rule contemplates situations where a nonclass action against an individual member, "while not technically concluding the other members, might do so as a practical matter." Fed.R.Civ.P. 23 Advisory Committee Note, 39 F.R.D. 69, 100–01 (1966).

■ Where, however, the *stare decisis* effect of individual actions presents the only potential prejudice to absent class members, Rule 23(b)(1)(B) is not satisfied. *LaMar v. H & B Novelty & Loan Company,* 489 F.2d 461, 467 (9th Cir.1973); *Klein v. Henry S. Miller Residential Services, Inc.,* 94 F.R.D. 651, 661 (N.D.Tex.1982); *Pruitt,* 85 F.R.D. at 108; *In re Itel,* 89 F.R.D. at 126.

In this case, plaintiffs have argued that the doctrines of collateral estoppel as well as *stare decisis* would substantially impair individual defendants from protecting their interests. Although the Fifth Circuit recognized in *Rachal v. Hill,* 435 F.2d 59, 61 (5th Cir.1970), *cert. denied,* 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971), that mutuality of estoppel is no longer required, collateral estoppel is not applicable unless "the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding" and no injustice will result to that party under the circumstances. *Rachal,* 435 F.2d at 62.

■ Collateral estoppel would appear to be unavailable to a plaintiff here suing a different defendant in an individual action, since the subsequent defendant would not have been a party to a prior suit and thus would not have had the opportunity to fully

defend against plaintiffs' claims. Thus, the only potential prejudicial impact of an individual action upon a subsequent action is its *stare decisis* effect on the subsequent action. Because this *stare decisis* effect is insufficient to satisfy Rule 23(b)(1)(B), certification under that portion of the rule must be denied.

### 3. *Rule 23(b)(3)*

The Fifth Circuit has recognized that a suit under Rule 23(b)(3) has been one of the principal weapons against fraud in securities transactions. *Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 482 F.2d 880, 883 (5th Cir.1973).[2] The rule provides in relevant part that any action which satisfies subdivision (a) of the Rule may proceed as a class action if

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the ... defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced ... against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

To establish liability against defendants on their federal securities law claims,[3]

---

**2.** In response to the court's request, both parties submitted supplemental briefs on the issue of maintaining this case as a class action under Rule 23(b)(3).

**3.** Although Rule 23 does not permit an evaluation of the merits in determining the propriety of a class action, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974), *Miller v. Mackey International, Inc.,* 452 F.2d 424, 428–30 (5th Cir.1971), the court cannot be oblivious to the fact that

this circuit does not recognize a private right of action under § 17(a) of the Securities Act of 1933. *Keys v. Wolfe,* 709 F.2d 413, 416 (5th Cir.1983); *Landry v. All American Assurance Company,* 688 F.2d 381, 384–91 (5th Cir.1982). Consequently, § 10(b) of the Securities Exchange Act of 1934 would appear to be plaintiffs' only viable claim for relief under the federal securities laws. In any event, the elements to establish a claim under § 17(a) are the same. *Jackson v. Oppenheim,* 411 F.Supp. 659, 665

plaintiffs will have to prove (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 543 (5th Cir.1981), *modified on other grounds,* 650 F.2d 815 (5th Cir.1981) *aff'd in part, rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

The element of scienter encompasses "a mental state embracing an intent to deceive, manipulate or defraud." *Huddleston,* 640 F.2d at 544 (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976)). The element of scienter may also be established by reckless conduct evidencing

> an extreme departure from the standards of ordinary care, ... which presents a danger of misleading buyers or sellers that is either known to the [actor] or is so obvious that the actor must have been aware of it.

*Huddleston,* 640 F.2d at 545 (citations omitted).

■ Thus, to the extent that scienter involves a mental state, proof of the requisite scienter is necessarily an individual matter which involves a subjective standard.[4] In other words, proof of the mental state of those defendants which plaintiffs seek to certify as class representatives will not supply all the proof necessary to establish the subjective mental state of the non-party sellers who would be members of the defendant class.

A claim under Section 10(b) may not be maintainable as a class action if individual proof is required with respect to a predominant question of law or fact. *See, e.g., Merrill Lynch,* 482 F.2d at 880. Since scienter will be an individual element of proof critical to the liability of each seller under the federal securities laws, the court finds that common questions do not predominate over questions affecting only individual members, so that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. *See Baum v. Great Western Cities, Inc. of New Mexico,* 703 F.2d 1197, 1210 (10th Cir.1983). Accordingly, this case should not be certified as a class action under Rule 23(b)(3).

### IV. *Other Matters*

The foregoing discussion has included only plaintiffs' federal claims because the court has decided that their state claims should be dismissed without prejudice to refiling in an appropriate state forum. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("pendent jurisdiction is a doctrine of discretion, not of plaintiff's right").

### V. *Conclusion*

For the reasons stated above, plaintiffs' motion to certify a class of defendants is DENIED. Plaintiffs' non-federal pendent claims are DISMISSED without prejudice.

SO ORDERED.

---

(S.D.N.Y.1974), *aff'd in part, rev'd in part,* 533 F.2d 826 (2d Cir.1976) (citations omitted).

**4.** *Cf. Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (with respect to the element of reliance, a common question existed because reliance involved an objective—as opposed to a subjective—standard).