**Russell E. DURRETT, individually and on behalf of all those similarly situated, Plaintiffs,**

**v.**

**JOHN DEERE COMPANY and Deere Credit, Inc., Defendants.**

**Civ.A. No. 3:92–CV–375–X.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 20, 1993.

---

James Michael Liles and Keith Michael Jensen, Liles, Hartley & Jensen, L.L.P., Fort Worth, TX, for plaintiffs.

Kenneth R. Valka and Claudia D. Christin, Baker & Hostetler, Houston, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

On October 1, 1992, counsel appeared before the Court at a hearing regarding class

certification. On considering the copious briefing on the motions for class certification, the arguments of counsel and the applicable law, the Court determines that a class should be certified and this case proceed as a class action under Rule 23(b)(3), FED.R.CIV.P.

## FACTS

From February of 1988 through December of 1991, John Deere financed, on a nationwide scale, consumers' purchases of recreational vehicles and boats through instruments entitled "Consumer Loan Contract— Security Agreement." Deere consummated approximately 14,000 of these contracts with Texas residents. In January of 1992, Deere mailed a notice to Texas residents with whom it had contracted notifying them that the choice of law provision in the contracts, a provision opting for Iowa law, may not comply with applicable Texas law.[1]

Persons with whom Deere had contracted began filing suit, arguing that Texas law applied to the contracts in their entirety because the Iowa choice of law provision was rendered voidable since Deere failed to comply with the conspicuousness requirement of the Texas Business & Commerce Code. The application of Texas law renders Deere vulnerable to a myriad of liabilities, Plaintiffs argue. They maintain that the contracts constituted loans under the Texas Consumer Credit Code, and that, because Deere was not licensed under the Code, Deere is liable for penalties for making unlicensed loans as well as for charging interest above the limit allowed for unlicensed lenders. Because Plaintiffs have concluded that Deere charged excessive interest, they assert causes of action based on statutory and common law usury theories as well as a cause of action under the Texas Deceptive Trade Practices Act. Plaintiffs also seek common law and statutory punitive damages. Suits based on these same causes of action are now legion, occurring throughout Texas in both state and federal courts. It appears as though their number continues to grow, as persons learn of their potential rights of action against Deere.

## RULE 23(a)

■ The Federal Rules of Civil Procedure supply four prerequisites to the certification of a class, each of which must be satisfied in order for a case to proceed as a class action. *Shivangi v. Dean Witter Reynolds, Inc.,* 825 F.2d 885, 891 (5th Cir.1987); *Huff v. N.D.Cass Co.,* 485 F.2d 710, 712 (5th Cir. 1973). Specifically, these requirements are contained in Rule 23(a), FED.R.CIV.P., and are commonly known as numerosity, commonality, typicality and representativeness. In addition, a proposed class must fit one of the class types enumerated in Rule 23(b), FED.R.CIV.P. A district court has broad discretion in certifying and managing a class action. *Longden v. Sunderman,* 123 F.R.D. 547, 551 (N.D.Tex.1988).[2]

■ The numerosity requirement implicates the impracticability of joinder in one court, *see Board of Educ. of Township High Sch. v. Climatemp, Inc.,* No. 79 C 3144, 1981 WL 2033 (N.D.Ill. Feb. 20, 1981), but imposes no absolute limitations. *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). Because the estimate of potential class members ranges as high as 14,000, the Court has no difficulty concluding that a class certified in this cause would satisfy the numerosity requirement.

■ Rule 23 also requires that there be questions of law or fact common to the class. Commonality is satisfied when there is "at least one issue whose resolution will affect all

---

1. The Texas Business and Commerce Code provides that in order for a choice of law clause in certain types of contracts to escape voidability at the hands of one against whom the clause is sought to be enforced, the clause must "be set out conspicuously in print, type, or other form of writing that is bold-faced, capitalized, underlined, or otherwise set out in such a manner that a reasonable person against whom the provision may operate would notice." TEX.BUS. & COM.CODE ANN. § 35.53.

2. *Cf.* FED.R.CIV.P. 23(c)(1): "As soon as is practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. *An order under this subdivision may be conditional, and may be altered or amended before a decision on the merits.*" (emphasis added). *See also* FED.R.CIV.P. 23(d), which details the "appropriate orders" that the court may make regarding management of a class action.

or a significant number of the putative class members." *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982). For this reason, "[t]he threshold of 'commonality' is not high." *Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir.1986). Because this action arises out of a single type of contract that is virtually, if not completely, identical in each transaction with Deere, common questions of law and fact abound.

■ The Rule also requires that the claims of the representative parties be typical of the claims of the class members. The test for typicality, like commonality, is not demanding. *Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir.1993). That the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory satisfies typicality. *Feinberg v. Hibernia Corp.,* Civ.A. No. 90–4245, 1992 WL 176119, at *5 (E.D.La. July 14, 1992). At a minimum, typicality requires that the proposed representatives be "part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). This does not mean, however, that the claims of the class representatives and those of the class must be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review,* 637 F.2d 1014, 1024 (5th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982). Yet in this case, the claims of the proposed class representatives are virtually identical to one another, as well as to claims that class members could assert, all arising out of the same form contract. To meet the typicality requirement, the putative class representatives must establish the bulk of the elements of each class members' claims when they prove their own. *Brooks v. Southern Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D.Fla.1990). For claims on which certification is sought, it appears that the putative representatives' claims are typical, if not identical, to causes of action that class members might assert against Deere were they to file their own suits.

■ Rule 23's representativeness element requires a showing that the representative will fairly and adequately protect the interests of the class. In the test for adequate representation, a court examines whether the representative has a sufficient interest in, and nexus with, the class to insure vigorous prosecution of the action. *In re S.Cent.States Bakery Prods. Antitrust Litig.,* 86 F.R.D. 407, 417 (M.D.La.1980). In this inquiry, courts have also focused on whether the representative's interests are coextensive with those of the class. Specifically, this query concerns whether there is a nexus between the representative's and the class's interests, whether the representative's interests are antagonistic to those of the class and whether there is adequate financial support from the representative for the litigation. *Id.* This inquiry necessarily concentrates on the competence of class counsel. *Ylla v. Delta Air Lines, Inc.,* No. 76–1503A, 1977 WL 87, at *2 (N.D.Ga. Sept. 23, 1977); *In re S.Cent. States Bakery Prods. Antitrust Litig.,* 86 F.R.D. 407 at 417; *see Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 75 (N.D.Tex.1984) (stating that one critical element of the adequacy criteria is that the representative parties, though their attorneys, vigorously, tenaciously and effectively prosecute the class claims). Special attention must be given to the issue of representativeness because that element's requisites flow from the demands of due process. *See Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Under these exacting standards, the Court finds that the putative class representative is capable of adequately representing the class, and the Court has no question regarding the adequacy or competence of class counsel.

### RULE 23(b)

■ Satisfaction of Rule 23(a)'s prerequisites is only a first step in the class certification process. On satisfaction of those elements, the moving party must then satisfy the court that the class seeking certification fits one of Rule 23(b)'s class types. That portion of the rule provides four types of actions maintainable as a class action, with each type tailored to fit the needs of particular situations. A Rule 23(b)(1)(A) suit con-

cerns a risk of inconsistent or varying adjudications that would risk the establishment of incompatible standards of conduct for the party opposing the class. For instance, separate actions by individuals against a municipality to declare a bond issue invalid or condition or limit it, to prevent or limit the making of a particular appropriation or to compel or invalidate an assessment, might create a risk of inconsistent or varying determinations. FED.R.CIV.P. 23 advisory committee's note. A certification under Rule 23(b)(1)(A) contemplates that a party would otherwise be subject to competing judgments, a situation in which the party could not comply with one without being in violation of the other. *McBirney v. Autrey*, 106 F.R.D. 240 (N.D.Tex.1985); *Walker v. City of Houston*, 341 F.Supp. 1124 (S.D.Tex.1971). Subsections (b)(1) and (b)(2), unlike subsection (b)(3), were designed for situations in which parties seek predominately equitable relief. Subsection (b)(1)(A), therefore, does not concern situations in which a defendant may merely be liable in damages to some plaintiffs but not to others. *McDonnell Douglas Corp. v. United States Dist. Ct.*, 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976).

Rule 23(b)(1)(B) deals with suits by class members outside of the class action that would be practically dispositive of the interests of the other class members who were not parties to the extra-class adjudications. In this category comes the notion of "limited fund," in which a finite amount of money might be available to satisfy all claimants. Should one plaintiff prove liability against the defendant and exhaust the fund, such a judgment would be practically dispositive of the rights of others similarly situated.

Rule 23(b)(2) involves claims in which the appropriate final relief does not relate exclusively or predominately to money damages, but rather regards final injunctive or corresponding declaratory relief. Examples include various actions in the area of civil rights in which a defendant is charged with discriminating against a class of which the members are usually incapable of specific enumeration. *See, e.g. Potts v. Flax*, 313 F.2d 284 (5th Cir.1963). Declaratory relief corresponds to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. FED.R.CIV.P. 23 advisory committee's note.

Rule 23(b)(3), the most broadly drawn of the class types, simply requires that questions of law or fact common to members of the class predominate over issues affecting only individual members and that the class action device be superior to other available methods for the fair and efficient adjudication of the controversy. The factors a court must take into account in this analysis include the following:

1) the interest of class members in individually controlling the prosecution of their own suit,

2) the extent and nature of litigation concerning the same issues already begun by or against members of the class,

3) the desirability of concentrating the litigation of the claims in the particular forum,

4) and the difficulties likely to be encountered in the management of a class action.

FED.R.CIV.P. 23(b)(3). *See generally* Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 IND.L.J. 507 (1987).

The first factor concerns the interest of potential class members in controlling their own litigation in separate suits. Although such desires are pertinent to the analysis, they should be subordinated to the advantages of having a defendant's liability determined in one proceeding when virtually all legal and factual issues are common to the class members. *Klamberg v. Roth*, 473 F.Supp. 544 (S.D.N.Y.1979). The next factor regards the extent and character of suits already filed concerning the same subject, and therefore focuses on the issue of duplicative litigation. If a class action would be just another suit among many and would not yield any real benefits either to the courts by way of judicial economy or to the parties, then this second factor would counsel against class certification. However, even if a number of similar suits already exist, a class action might prevent the initiation of further litigation if class members who have not filed suit could have their rights adequately deter-

mined by a representative in a class action. *See, e.g., Technograph Printed Circuits, Ltd. v. Methode Elecs., Inc.,* 285 F.Supp. 714 (N.D.Ill.1968). The third factor concerns the desirability of concentrating the litigation in the particular forum. A court must consider here such issues as accessibility for both witnesses and the production of evidence, as well as the court's suitability for dealing with the particular action with an eye toward discouraging duplication of effort. Edward F. Sherman, *Class Actions and Duplicative Litigation,* 62 IND.L.J. 507 (1987). The fourth factor concerns difficulties in managing the action. Issues pertinent here include the size or contentiousness of the class, the onerousness of complying with notice requirements, the number of class members who may try to intervene and participate and the presence of special and individual issues. 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1780 (1986).

One of the most salient differences among Rule 23(b)'s class types concerns the right to receive notice and to opt out. Rule 23 mandates that a court provide notice to class members of their right to exclude themselves from the class and therefore the results, favorable or not, of the action's judgment or settlement. FED.R.CIV.P. 23(c)(2). This absolute right applies only to classes certified under Rule 23(b)(3), though. The right to notice exists otherwise in the court's discretion.

On analysis of the factors enumerated above, the Court is compelled to certify this cause as a class action under Rule 23(b)(3). It is clear that Rule 23(b)(1)(A) does not apply to the facts at issue because adjudications in actions other than this action would not subject a party to the danger of inconsistent adjudications in which compliance with one judgment would constitute noncompliance with another. Likewise, Rule 23(b)(1)(B) is inapplicable because adjudications regarding potential class members in suits other than this one would be dispositive of no one's rights except one's own. Because this suit involves neither injunctive relief nor declaratory relief that practically amounts to injunctive relief, Rule 23(b)(2) is similarly

unavailable. The only alternative is, then, Rule 23(b)(3).

The Court finds that both the questions of law and fact involved in this case, all of which would be common to the members of any class certified because all arise out of similar if not identical contracts, predominate over any questions affecting only individual members. Regardless of the Court's concerns with efficiency discussed below, the Court determines further that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Because common questions of law and fact eclipse issues that might arise as to individual class members, the advantages of having the defendants' liability determined in one proceeding diminish any interest that individual class members may have in maintaining their own suits. For the foregoing reasons, the Court determines that a class should be certified under Rule 23(b)(3).

The Court does not make this determination lightly, though; nor is the Court insensitive to Defendants' concerns. Because of Rule 23(b)(3)'s opt out component, certification under that rule will compel patently inefficient results, both in terms of court time and effort and of party—especially defendant—time and effort, not to mention money. As noted above, potentially 14,000 plaintiffs have causes of action against Deere. These causes of action, with the exception of damages calculation, would be identical. Adjudicating these claims in one court, at one time, in one class action seems the only common sense method of resolution, especially were one given the alternative of over 10,000 suits all over the state. State wide, multicourt adjudication would be like death by 10,000 cuts to any defendant, win or lose. And probably, a defendant in such a situation would win some and lose some, which also is unsettling assuming that each potential class member's suit arises from identical fact patterns involving mostly questions of law.

The opt out provision appears especially antithetical to the economies attending the class action device when a court, as here, predicates its subject matter jurisdiction on diversity of citizenship. It is well known that diversity alone will not invest a court with

jurisdiction; additionally, the plaintiff's claim must exceed $50,000. 28 U.S.C. § 1332. Yet the basic requirement of amount in controversy develops a new tenor when set in the context of a class action: *"Zahn [v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) ] teaches that each plaintiff in a class action under Fed.R.Civ.P. 23(b)(3), where subject matter jurisdiction is founded on diversity of citizenship, must independently meet the 28 U.S.C. § 1332 jurisdictional amount requirement." *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1021 (5th Cir. 1992), *reh'g en banc granted,* 990 F.2d 805 (5th Cir.1993).[3] This means that each plaintiff in the class must have potential damages in excess of $50,000, a requirement contrasting with at least one reason for the class action device: that one who incurred de minimis damages might otherwise go unrecompensed because the economics of litigation militated against bringing suit, but instead could band together with others similarly situated and corporately seek redress because the *en masse* nature of the class overcomes the countervailing economic concerns.

The *Zahn* requirement and the contrast just described hold special implications for this case. Because all class members over whom this Court would have subject matter jurisdiction must individually have an amount in controversy exceeding $50,000, each has a potential recovery large enough to attract counsel and to make the prosecution of a separate claim quite alluring. This postulate behooves not just some, but perhaps all of the class members to opt out in order to maximize their own potential recoveries. These speculative musings have already found some empirical support; at this point in the litigation, before right to opt out notice has issued, the Court has already received quite a number of completed opt out notices. The Court is therefore in the unfortunate posture of dealing with reams of briefs regarding certification issues, holding a certification hearing and certifying a class only to be left with the well-founded concern that the

Court's new, copiously wrought and filled basket will empty itself of its own accord. Redundant suits would be legion and the defendants would be left to fight a thousand front war.

One wonders why a rule in a system of rules that are supposedly to be "construed to secure the just, speedy, and inexpensive determination of every action," FED.R.CIV.P. 1, must be construed to a resolution arguably unjust, financially wasteful and intractable. Facially, Rule 23 does not coerce this square peg case into Rule 23(b)(3)'s round hole structure. One might, with a straight face, argue that absent a class, "the prosecution of separate actions by … individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class…." FED. R.CIV.P. 23(b)(1)(A). Rule 23(b)(1)(A) contains no opt out requirement, and the disappearing class conundrum and duplicative litigation problem would therefore solve themselves. It is not until one consults the advisory committee notes, which do not state the law, *see Schiavone v. Fortune,* 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986) (advisory committee notes do not foreclose judicial consideration of the Rule's meaning), that one learns that money damage cases really do not seem to fit anywhere but Rule 23(b)(3).

It therefore begins to appear strange that a court would force itself, as well as other courts, both state and federal, and the parties to undergo such duplication of time, effort and financial resources. The resolution to this paradox lies in the Supreme Court's interpretation of due process requirements in certain class action contexts. In *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Court addressed an argument that the opt out procedure of the Kansas class action statute was in derogation of due process; instead, the argument went, due process required an opt

---

**3.** There is some support, though, for the proposition that Congress overruled the *Zahn* requirement by enacting the supplemental jurisdiction provision found in 28 U.S.C. § 1367. *See, e.g., Garza v. National American Ins. Co.,* 807 F.Supp.

1256, 1258 & n. 6 (M.D.La.1992) (collecting authority and concluding that Congress had overruled *Zahn* ). Perhaps this support underpins the Fifth Circuit's having granted rehearing *en banc* in *Watson.*

in procedure. Disagreeing, the Court stated the following:

> If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

*Id.* at 811–12, 105 S.Ct. at 2974 (citations omitted). The Court tailor made its holding for cases like this one: "Our holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments." *Id.* at 811 n. 3, 105 S.Ct. at 2974 n. 3. Although addressing issues arising under state law, the Court's analysis seems equally applicable to Rule 23, the virtually identical federal analogue, and commentators have so opined. *See, e.g.,* 1 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 1.16 (3d ed. 1992).

The apparent difference in due process rights accorded to classes certified under Rule 23(b)(3) as compared to classes otherwise certified stems from protections adhering to the equitable 23(b)(1) and (b)(2) class types but less tenaciously clinging to the legal Rule 23(b)(3) category. Rule 23(b)(3) class members are legal strangers related only by some common question of law or fact. *Simon v. World Omni Leasing, Inc.,* 146 F.R.D. 197, 202 (S.D.Ala.1992). Class members under the other provisions have interests more closely aligned. Wright, Miller & Kane explain the difference:

As several courts have noted, the critical problem raising due process concerns in actions under subdivision (b)(3) is not simply notice of the institution of the action, but whether the absent members actually are adequately represented. Effective representation is especially important in Rule 23(b)(3) actions because the class members are only loosely associated by common questions of law or fact, rather than by any pre-existing or continuing legal relationship.

In representative actions brought under the other provisions of Rule 23(b), the class generally will be more cohesive—for example, in many instances each member will be affected as a practical matter by a judgment obtained by another member if individual actions were instituted. Similarly, it is less likely that there will be special defenses or issues relating to individual members of a Rule 23(b)(1) or Rule 23(b)(2) class, than in the case of a Rule 23(b)(3) class. This means that there is less reason to be concerned about each member of the class having an opportunity to be present. Thus, in suits under subdivisions (b)(1) or (b)(2), once the court determines that the members are adequately represented as required by Rule 23(a)(4), it is reasonably certain that the named representatives will protect the absent members and give them the functional equivalent of a day in court.

In keeping with this philosophy, class members in Rule 23(b)(1) and Rule 23(b)(2) actions are not provided an opportunity by the rule to exclude themselves from the action as is true in Rule 23(b)(3) actions.

7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1786 (1986) (footnotes omitted); *see also White v. National Football League,* 822 F.Supp. 1389, 1409 (D.Minn. 1993) (noting same differences).

The Eleventh Circuit recognized another commentator on the subject thus:

At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness.... Injuries remedied through (b)(2) actions are really group, as opposed to

individual injuries. The members of a (b)(2) class are generally bound together through "preexisting or continuing legal relationships" or by some significant common trait such as race or gender. Although the interests of the different members of a (b)(2) class are by no means identical the substantial cohesion of those interests makes it likely that representative members can adequately represent the interests of absent members and that the need for and interest in individual representation will be minimal. Under such circumstances, the contribution that individual notice can make to buttressing adequate representation is not great enough to warrant a mandatory procedural or constitutional requirement.

Note, *Notice in Rule 23(b)(2) Class Actions for Monetary Relief: Johnson v. General Motors Corp.*, 128 U.Pa.L.Rev. 1236 (1980), *quoted in Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 n. 8 (11th Cir.1983).

For the foregoing reasons, it does not appear as though this Court, with an eye toward efficiency, could simply take another look at Rule 23 and certify a class that would obviate hundreds, if not thousands, of duplicative lawsuits. The plain language of the *Shutts* court precludes denying notice and the right to opt out to the plaintiffs. The Court therefore certifies the following class under Rule 23(b)(3):

> Every person who, on or after February 19, 1988, and prior to December 1, 1991, and while a resident of Texas, contracted with John Deere Company for financing the purchase in Texas of a recreational vehicle or boat, which was to be used primarily for personal, family or household purposes.

**SO ORDERED.**