Shirley Y. MORGAN, et al., Appellants,

v.

DEERE CREDIT, INC. and Deere
& Company, Successor to John
Deere Company, Appellees.

No. C14–93–01017–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 11, 1994.

Rehearing Overruled Sept. 22, 1994.

Grant Gealy, George W. Vie, Houston, for appellants.

Kenneth R. Valka, Todd F. Barth, Claudia D. Christian, Lisa H. Pennington, Staci F. Spalding, Houston, Keith M. Jensen, J. Michael Liles, Fort Worth, for appellees.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This interlocutory appeal is from the certification of a mandatory class under Rule

42(b) of the Texas Rules of Civil Procedure, sought by appellees, Deere Credit, Inc., and Deere & Company, Successor to John Deere Company ("Deere"). *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(3) (Vernon Supp. 1994). Appellants, Shirley Y. Morgan and a class of persons similarly situated, contend in five points of error that the trial court abused its discretion. We affirm.

The underlying suit concerns the claims of Texas residents who entered financing agreements with Deere to purchase boats or recreational vehicles ("RV's"). About 15,000 Texas residents purchased Deere's RV's and boats between February 1988 and December 1991 and financed them through Deere. In its standardized loan contract forms, Deere failed to use the statutorily required typographic style on its choice of law clauses. *See* TEX.BUS. & COM.CODE ANN. § 35.53 (Vernon Supp.1994).[1] Each contract stated the law of Iowa, Deere's home state, governed the transaction, but the clause was not printed in boldface type. Upon discovering this omission, in January 1992 Deere sent "cure" letters to over 10,000 Texas residents who had obtained financing through these contracts, informing them that their contracts may not have complied with Texas law. Deere gave them the option to ratify the Iowa choice of law provision. Many of these consumers with whom Deere had·contracted began asserting claims that Texas law applies and the contracts violate the Texas Consumer Credit Code. *See* TEX.REV.CIV. STAT.ANN. art. 5069–1.02—8.06 (Vernon 1987 & Supp.1994). The residents alleged Deere violated Texas usury laws, which require certain lenders to be licensed and regulated by the Texas Consumer Credit Commissioner. Without the license, lenders are prohibited from charging interest rates of more than 10 percent, as Deere did in making these loans. *See* TEX.REV.CIV.STAT.ANN. art. 5069– 1.04(n)(1) (Vernon Supp.1994).[2] In addition to the common law and statutory usury causes of action, some of the residents also alleged Deere violated the Texas Deceptive Trade Practices Act. *See* TEX.BUS. & COM. CODE ANN. §§ 17.41–.63 (Vernon 1987 & Supp.1994). In response to these claims, Deere brought this declaratory judgment action on February 20, 1992, seeking to determine its rights and obligations under the agreements. The residents named in this suit counterclaimed attempting to avoid their contractual obligations and recover penalties from Deere. *See, e.g.*, TEX.REV.CIV.STAT.ANN. art. 5069–8.03 (Vernon 1987) (total forfeiture of principal and interest paid or due); TEX. REV.CIV.STAT.ANN. art. 5069–8.01(b) (Vernon 1987) (forfeiture of double the interest provided for in the contract up to $4,000).

The previous day, February 19, 1992, Russell Durrett, raising essentially the same contentions as the residents in this suit, filed suit against Deere in state court in Dallas County, Texas (the *"Durrett"* action). Similar suits were filed in both state and federal courts around the state, and the claims of other residents were consolidated in the *Durrett* action. Deere removed the *Durrett* action to federal court and filed a motion to

---

1. Prior to its amendment in 1989, the statute required that for a choice of law clause in these types of contracts to escape voidability by one against whom the clause is sought to be enforced, the provision must be set out in boldfaced print. Act effective September 1, 1987, 70th Leg., R.S., ch. 812, § 1, 1987 Tex.Gen.Laws 2815. In 1989, the law was revised to provide that the clause "must be set out conspicuously in print, type, or other form of writing that is boldfaced, capitalized, underlined, or otherwise set out in such a manner that a reasonable person against whom the provision may operate would notice." Act effective September 1, 1989, 71st Leg., R.S., ch. 622, § 2, 1989 Tex.Gen.Laws 2052.

2. While these actions were pending, the Texas legislature, at Deere's urging, amended the Consumer Credit Code to allow licenses to be grant-

ed retroactively to lenders. Effective May 20, 1993, the amendment allows an entity which had engaged in unlicensed lending to retroactively license itself and avoid the penalties imposed in the Consumer Credit Code. TEX.REV.CIV.STAT.ANN. art. 5069–8.01(i) (Vernon Supp.1994). An exemption was added to the law, however, so that cases pending as of March 12, 1993, were not affected. TEX.REV.CIV.STAT.ANN. 5069–8.01(i) historical note (Vernon Supp.1994) [Act effective May 20, 1993, 73rd Leg.R.S., ch. 229, § 2, 1993 Tex.Gen.Laws, 478, 479]. Deere has now obtained the required license, but both *Durrett* and this action were filed in 1992 and are exempt from the amendment, leaving Deere subject to the imposition of penalties. Recently, this court was notified that settlement was pending in *Durrett* after an agreed remand to state court.

certify a mandatory class of all the plaintiffs. Durrett filed a cross-motion for certification of an "opt-out" class. On November 6, 1992, the United States District Court for the Northern District of Texas certified an "opt-out" class. The class included all Texas residents who financed the purchase of an RV or boat through Deere between February 19, 1988 and December 1, 1991. The plaintiffs had the right, however, to receive notice and to exclude themselves from the class, and therefore from the results, favorable or not, of the action's judgment or settlement, as provided in federal rule 23(c)(2). FED. R.CIV.P. 23(c)(2). The court entered a Memorandum Opinion and Order on August 20, 1993. *See Durrett v. John Deere Co.*, 150 F.R.D. 555 (N.D.Tex.1993). Pursuant to 28 U.S.C. § 1292(b), Deere filed an application for an interlocutory appeal, which was certified by the district court; however, the Fifth Circuit denied Deere's application on September 28, 1993.

The federal court certified the cause as a non-mandatory or opt-out class action under Rule 23(b)(3) of the federal rules of civil procedure. 150 F.R.D. at 563. Rule 23(b)(3) is the identical counterpart to our Rule 42(b)(4), and both provide that an action may be maintained as a class action if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

TEX.R.CIV.P. 42(b)(4); FED.R.CIV.P. 23(b)(3). Only members of classes certified under rule 23(b)(3) or 42(b)(4) are granted the absolute right to opt out and pursue individual claims.

On June 3, 1993, after the opt-out class had been certified in federal court but before the denial of that appeal, Deere moved in this suit in state court for certification of a mandatory class comprised of all individuals who opt out of *Durrett*. After a hearing on July 19, 1993, the court certified a mandatory class under Rules 42(b)(1)(A), 42(b)(1)(B) and 42(b)(2) of the Texas Rules of Civil Procedure, by order dated October 12, 1993, composed of:

> [A]ll persons who, on or after February 19, 1988 and prior to December, 1991, and while he or she was a Texas resident, entered into an agreement with John Deere Company for financing the purchase of a boat or recreational vehicle, primarily for personal, family or household use, and who opts out or has opted out of the class action in *Russell E. Durrett, Individually and on Behalf of All Those Similarly Situated v. John Deere Company and Deere Credit, Inc.*, pending under Cause No. 3-93CV0375-X in the United States District Court for the Northern District of Texas.

At the time of the hearing, the class was composed of approximately 550 members. Findings of fact and conclusions of law were requested, but none were filed. There is no dispute on appeal that the four prerequisites for class certification under rule 42(a) have been met. The issues in this case instead center on the trial court's determination of the category of class to be maintained under rule (42)(b).

■ Our rules 42(b)(1)(A), 42(b)(1)(B), and 42(b)(2), the rules cited by the court below in establishing a mandatory class, are the identical counterparts to federal Rules 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2). These rules provide:

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible

standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

Tex.R.Civ.P. 42(b)(1), (2); Fed.R.Civ.P. 23(b)(1), (2). Because rule 42 is patterned after federal rule 23, federal decisions are persuasive in interpreting the Texas rule. *Ball v. Farm & Home Sav. Ass'n,* 747 S.W.2d 420, 422–23 (Tex.App.—Fort Worth 1988, writ denied); *Smith v. Lewis,* 578 S.W.2d 169, 172 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

At the hearing, Deere's counsel admitted it sought a mandatory class so that it could obtain the benefit of the limitation on damages provided in the Consumer Credit Code. Article 5069–8.04(b) provides "the total recovery . . . in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $100,000 or five percent of the net worth of the person." Tex.Rev.Civ.Stat.Ann. art. 5069–8.04(b) (Vernon 1987). Deere also argued at the hearing that certification of a mandatory class would act to stay the various state actions until a decision was reached in the appeal of the federal class certification.

■■■ At the certification stage, class proponents generally are not required to make an extensive evidentiary showing in support of a motion for class certification. *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 773 (Tex.App.—Fort Worth 1986, no writ). Under Rule 42(c)(1), like its federal counterpart, the trial court may alter, amend, or withdraw class certification at any time

before final judgment. *Salvaggio v. Houston I.S.D.,* 709 S.W.2d 306, 309–310 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd). Thus, when a trial court makes a determination of class status at an early stage of the proceeding before supporting facts are fully developed, it should favor maintenance of a class action. *Clements v. League of United Latin American Citizens (LULAC),* 800 S.W.2d 948, 952 (Tex.App.—Corpus Christi 1990, no writ).

■■ The standard of review of a trial court's order certifying a class action is limited to determining whether the court abused its discretion. *Salvaggio,* 709 S.W.2d at 308. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the trial court made an error in judgment. Rather, it is a question of whether the court acted without reference to any guiding rules and principles, that is, whether it acted arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex. 1970). We are required to view the evidence in the light most favorable to the trial court's action and indulge in every presumption favoring the court's ruling. *Angeles/Quinoco Securities Corp. v. Collison,* 841 S.W.2d 511, 512 (Tex.App.—Houston [14th Dist.] 1992, no writ).

■ In their first point of error, appellants assert the trial court erred as a matter of law in certifying the class. In this point, appellants argue the federal court has dominant and exclusive jurisdiction over the subject matter of this suit, including certification of a class, because the *Durrett* suit was filed first. Appellants argue not only that Deere subjected itself to the jurisdiction of the federal court in *Durrett,* but also that Deere was the party who removed the case to federal court and moved for certification of a mandatory class. Appellants argue therefore that Deere should be bound by the federal court's determination.[3]

---

3. Deere argues the federal court in *Durrett* refused to protect its jurisdiction by denying the *Durrett* class members' motion to enjoin the state

court from certifying a state court class action. Because we denied leave to supplement the transcript, this motion is not in the record before us

Appellants correctly assert that when two courts have coordinate subject matter jurisdiction, the court first acquiring jurisdiction retains its jurisdiction until the matter is disposed of, and another court may not interfere with its power to act, relying on *Cook v. Neill*, 163 Tex. 49, 352 S.W.2d 258, 262 (Tex. 1961), and *Hibbler v. Walker*, 593 S.W.2d 398, 400 (Tex.App.—Houston [14th Dist.] 1980, no writ). Under these facts, this reliance is misplaced. In *Hibbler*, we recognized that a subsequent, duplicate lawsuit involving the same parties and cause of action filed in another county should be abated unless a party's actions estop him from asserting the first court's jurisdiction. 593 S.W.2d at 400. *Cook* concerned choosing between administrative remedies and the district court's coordinate jurisdiction, based upon specific statutes. By filing suit in the district court, the court held Neill effectively abandoned his administrative appeal and elected to proceed in district court. 352 S.W.2d at 266. Here, appellants opted out of *Durrett* and are pursuing their claims in state court; the two suits no longer involve the same parties. Because they opted out of the federal class, the federal court no longer has exclusive jurisdiction over appellants, and they may pursue their claims, based on violations of state law, in state court. Accepting appellants argument would require that not only class certification but also appellants' *individual* claims must be abated pending the outcome of the federal litigation. We reject this position. Appellants have not cited us to any authority prohibiting state court action when a federal case with the same claims is pending, and we can find none. To the contrary, we find it entirely proper for the class members who opt out of *Durrett* to bring their claims in state court. *See generally Bloyed v. General Motors Corp.*, 881 S.W.2d 422 (Tex.App.—Texarkana, 1994, writ requested) (disapproving settlement agreement in state class action previously approved in federal class action excluding Texas residents, *In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liability Litig.*, 846 F.Supp. 330 (E.D.Pa.1993)).

We also find that the rule of comity, as expressed in *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423 (Tex.App.—Houston [14th Dist.] 1993, orig. proceeding), is inapplicable here. There, as in *Keene Corp. v. Caldwell*, 840 S.W.2d 715 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding), we considered the deference to be given to a protective order issued by a federal district judge prohibiting disclosure of privileged information. We recognized that the principle of comity precludes one court from intruding upon the orders of another unless there are concrete public policy concerns. 861 S.W.2d at 426; 840 S.W.2d at 720. Our facts are not analogous to the discovery protection ordered for privileged documents. We find that the public policy concerns advocating judicial economy, combined with the different legal and factual considerations before the state court, as discussed more fully later in this opinion, make the principle of comity inapplicable here.

We hold that the state court had jurisdiction to certify the class despite a pending federal court action on the same claims brought by different claimants against Deere. We overrule appellants' first point of error.

In their second point of error, appellants contend that the trial court abused its discretion in certifying a mandatory class because it erroneously applied the doctrine of collateral estoppel. They argue that under the rules of collateral estoppel, Deere is precluded from relitigating the issue of certification of the class.

In *Durrett*, the federal court outlined its reasons for rejecting the other types of classes and certifying a class under rule 23(b)(3). The court reasoned as follows:

It is clear that Rule 23(b)(1)(A) does not apply to the facts at issue because adjudications in actions other than this action would not subject a party to the danger of inconsistent adjudications in which compliance with one judgment would constitute noncompliance with another. Likewise, Rule 23(b)(1)(B) is inapplicable because ad-

---

and we may not consider Deere's argument that the federal court's refusal to enjoin the state

court estops reconsideration of the issues raised in the motion.

judications regarding potential class members in suits other than this one would be dispositive of no one's rights except one's own. Because this suit involves neither injunctive relief nor declaratory relief that practically amounts to injunctive relief, Rule 23(b)(2) is similarly unavailable. The only alternative is, then, Rule 23(b)(3).

150 F.R.D. at 560. Thus, appellants argue the trial court was required by collateral estoppel to certify the class under rule 42(b)(4), our counterpart to rule 23(b)(3).

▮ Collateral estoppel provides that once an essential issue has been litigated and determined, that issue is conclusive in a subsequent action between the parties. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Because the claims asserted by Deere in the state court proceeding are claimed to have been originally litigated in a related federal court proceeding, the federal collateral estoppel rules apply. *Shell Pipeline Corp. v. Coastal States Trading, Inc.,* 788 S.W.2d 837, 843 (Tex.App.—Houston [1st Dist.] 1990, writ denied). For the federal doctrine of collateral estoppel to apply to a subsequent, related state court proceeding, three requirements must be met: (1) the prior federal decision resulted in a "judgment on the merits;" (2) the same fact issues sought to be concluded must have been "actually litigated" in the federal court; and (3) the disposition of those issues must have been "necessary to the outcome" of the prior federal litigation. *Id.,* citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

▮ First, the federal action did not result in a final judgment. A class certification order cannot usually be characterized as final or irrevocable because it is subject to redetermination as the litigation progresses. *See* Tex.R.Civ.P. 42(c)(1); Fed.R.Civ.P. 23(c)(1); *see also Unnamed Members of Class v. McMahon,* 582 S.W.2d 600, 602 (Tex. App.—Houston [1st Dist.] 1979, no writ). We distinguish our earlier decision in *Acker v. City of Huntsville,* 787 S.W.2d 79 (Tex. App.—Houston [14th Dist.] 1990, no writ). We found in *Acker* that a federal court's granting of partial summary judgment precluded the state court from later entering a contrary judgment on the same issue. *Id.* at 82. Relying on Restatement (Second) of Judgments § 13, we found that even though the partial summary judgment was not appealable, the judgment was procedurally firm so as to have conclusive effect in the second action. *Id.* In our case, however, the class certification issue is not procedurally definite; rather, it is subject to change as provided in the rules. We hold the issue of class certification does not satisfy the test of finality for application of issue preclusion.

▮ In addition, we find the issues are not identical. *See Rufenacht v. Iowa Beef Processors, Inc.,* 656 F.2d 198, 202 (5th Cir. 1981); *see also Getty Oil Co. v. Ins. Co. of North America,* 845 S.W.2d 794, 802 (Tex. 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993) (issue in first action must be identical to issue in pending action for collateral estoppel to apply). While rules 42(b)(1) and (2) are identical to rules 23(b)(1) and (2), we note that the "opt-out" provision contained in Texas rule 42(c)(2) is materially different than federal rule 23(c)(2) in one significant aspect. The Texas rule requires "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort," be sent to all types of class members, not just opt-out classes, as the federal rule provides. All members have the right to appear and "challenge the court's determinations as to the class and its representatives." Tex.R.Civ.P. 42(c)(2). From the earliest years after authorization of class actions in 1941, Texas courts have allowed class members to intervene and object or urge matters not previously raised by the class representative, rather than being bound by the representative's manner of prosecuting or defending the suit. *See, e.g., Shebay v. Davis,* 717 S.W.2d 678, 681 (Tex.App.—El Paso 1986, no writ); *Crowley v. Carter,* 192 S.W.2d 787, 790 (Tex. App.—Fort Worth 1946, orig. proceeding). Thus, the same due process concerns expressed by the federal court in *Durrett* are not present here.

▮ Not only is there a difference in some of the rules, those rules that are identi-

cal sometimes have been applied differently by Texas courts. Collateral estoppel does not apply when the standards of proof for the maintenance of a class action are different in federal and state court. *Cullen v. Margiotta*, 811 F.2d 698, 732–33 (2nd Cir.1987), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Deere contends the standards here differ significantly because Texas courts have rejected federal law requiring opt-out classes in suits like this one where certification under that rule would compel patently inefficient results.

■■ In support of these differing standards, Deere cites *Adams v. Reagan*, 791 S.W.2d 284 (Tex.App.—Fort Worth 1990, no writ). In that investors' suit against former officers and directors of a financial investment company, the court held that "the better Texas rule" would be to certify a class action "where to fail to certify would result in inconsistent or varying results." *Id.* at 292–93. The court in *Adams* certified a mandatory class under rule 42(b)(1)(A) even though appellees sought money damages, rejecting the federal court interpretation that there is no risk of inconsistency where a defendant is liable for damages to one plaintiff but not to another. *Id.* at 292, citing *McBirney v. Autrey*, 106 F.R.D. 240, 245 (N.D.Tex.1985). The finding in *McBirney* that the federal counterpart to our rule 42(b)(1)(A) is applicable *only* where judgments in separate suits would "trap the party opposing the class in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another" was disavowed by *Adams*. 106 F.R.D. at 245. The *Adams* court emphasized that class certification where there were between 800 and 1100 potential class members was preferable to individual suits where uniformity of results would be unlikely. Similarly, the trial court here, in its discretion, found that under these facts, a mandatory class is a superior method of litigating these claims. While we may disagree with the holding and reasoning in *Adams*, we find the trial court did not abuse its discretion in basing its decision on these guiding principles.

Appellants point to the United States Supreme Court's pronouncement that due process requires permitting a plaintiff to opt out of a class in a suit for money damages. The Court stated:

If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12, 105 S.Ct. 2965, 2974, 86 L.Ed.2d 628 (1985) (footnote and citations omitted) (discussing opt out procedure in Kansas class action statute). We find *Shutts* inapplicable to these facts. The due process issue considered there was whether "the 'opt out' notice to absent class members ... was insufficient to bind class members who were not residents of Kansas or who did not possess 'minimum contacts' with Kansas." 472 U.S. at 803, 105 S.Ct. at 2969. The holding appellants rely upon relates to the due process rights of *absent* class members, meaning class members over whom the Kansas court did not have personal jurisdiction. In this case, all class members are by definition Texas residents.

In *Cullen*, cited by Deere, a prior state court ruling that denied maintenance of the state suit as a class action was held not to have collateral estoppel effect on a later federal class action. 811 F.2d at 733. The court reasoned that the standards governing the propriety of the suit as a class action in state court and federal court differed significantly. New York courts had interpreted the state class action rules as not permitting

class actions to be maintained on the basis of separate wrongs to separate persons, even if pursuant to a common plan as the federal rules permit; rather it required the complaint to allege a wrong against the class as a whole. *Id.* This contrasting interpretation of identical or similar rules, much like the state court interpretation of the class action rules in *Adams,* is exactly the type of different standards that Deere maintains precludes application of collateral estoppel here.

The doctrine of collateral estoppel is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. *See Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994). Relitigation of class certification should not be precluded in this case because the purposes of the collateral estoppel doctrine would not be served. *See Trapnell* at 801. Moreover, if the doctrine were applied here, requiring an opt-out class in this state action, it would promote the *opposite* of the doctrine's goals: duplicative litigation, judicial inefficiency and waste. We hold that, under these facts, collateral estoppel does not bar relitigation of the type of class to be maintained in the state court action. We overrule appellants' second point of error.

In point of error three, appellants contend the trial court abused its discretion in certifying a class by erroneously finding a risk of "inconsistent and varying adjudications." The trial court found certification proper under rule 42(b)(1)(A) to prevent inconsistent adjudications. Appellants argue the rule requires more; it requires that these adjudications result in incompatible standards of conduct. They contend mandatory certification is improper in a suit for money damages, relying on *McBirney v. Autrey,* 106 F.R.D. 240 (N.D.Tex.1985). *Adams* rejected *McBirney* and found a "better Texas rule" allowing mandatory certification when judicial economy so requires. We find no abuse of discretion in the trial court following

this reasoning in applying rule 42(b)(1)(A). We overrule point of error three.

In point of error four, appellants argue the trial court abused its discretion in misapplying the risk of adjudications "dispositive of the interests of the class members not parties to the adjudication," under rule 42(b)(1)(B). This type of class is generally appropriate where there are multiple claimants to a limited fund. Because a class already has been certified in *Durrett,* a limited fund of $100,000 was established pursuant to the maximum penalty imposed for a single course of conduct affecting a class or series of classes under article 5069–8.04(b). TEX. REV.CIV.STAT.ANN. art. 5069–8.04(b) (Vernon 1987). When the issue of certification in *Durrett* was decided, there was not yet a class established. Thus, the state court was faced with different considerations in the application of this rule. Deere contends that it is premature to address the merits of the limited fund argument before discovery has been completed, but that it is appropriate for the court to protect the claimants in the event Deere prevails in limiting damages at trial. While we may not agree with the trial court's determination, we cannot say the trial court abused its discretion in certifying a mandatory class to preserve the limited fund for all claimants. Appellants' fourth point of error is overruled.

Finally, in their fifth point of error, appellants contend the court abused its discretion in certifying a class by erroneously applying the standard on declaratory relief under rule 42(b)(2). Rule 42(b)(2) provides that a mandatory class may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Deere originally brought this action as a declaratory judgment action. In contrast, in the *Durrett* action, Deere's request for declaratory relief was asserted as a counterclaim. A counterclaim for declaratory relief which in substance raises defenses to the plaintiff's claims is not viewed as a true declaratory judgment action. *See, e.g., Heritage Life Ins. Co. v. Heritage Group*

*Holding Corp.*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied). Therefore, the federal court had a different basis for rejecting certification under the federal counterpart to this rule.

Deere asserts this case is analogous to the situation in *Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d 332 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). There the court determined that if the prerequisites of subsection (a) are met and declaratory or injunctive relief is requested as a major part of the suit, the action should be allowed to proceed under rule 42(b)(2). *Id.* at 338. Like the plaintiffs in *Wiggins* who sought a declaratory judgment against a defendant class to construe pooling agreements containing an identical royalty provision, Deere seeks to certify appellants as a defendant class and to obtain a declaratory judgment construing identical language in consumer financing contracts. The court in *Wiggins* found a declaratory judgment would act as an injunction because the plaintiffs were still acting under the royalty clause at issue. *Id.* The court also held that there is no general proscription against certification of a defendant class under section 42(b)(2), even though the declaratory relief may sought in favor of the party opposing the class. *Id.*

 In this case, Deere is the party opposing the class and seeking declaratory relief. Hence, *Wiggins* would allow certification of a class under rule 42(b)(2). Appellants argue, however, that the declaratory relief Deere seeks is not equivalent to injunctive relief because Deere has obtained the required license and is no longer engaged in unlawful lending practices. If Deere prevails in its declaratory action, however, the judgment would act to enjoin appellants from suing for usury and other claims. The declaration sought by Deere is not merely "incidental baggage" added as basis for a later award of damages. *See id.* Should Deere be unsuccessful, it would be enjoined in effect from continuing to enforce its agreements. Thus, the declaratory relief is prospective in nature because it will determine the course of conduct between the parties concerning the obligations under the financing agreements. In light of the rules allowing partial

certification of issues, *Wiggins* does not require the injunctive or declaratory relief be the primary thrust of the action. *Id.* Deere argued this very point, asserting that if any issues remain undecided after declaratory relief is granted, for example if some class members are entitled to submit proof of actual damages, then the court could later amend the certification to delete those issues from the class action, as permitted by rules 42(c)(1) and 42(d). In view of the possibilities open to the trial court under the law, we cannot conclude the court abused its discretion. *See Franklin v. Donoho*, 774 S.W.2d 308, 313 (Tex.App.—Austin 1989, no writ). Appellants' fifth point is overruled.

 There is no dispute that the claims of each of the class members involve identical issues of fact and law. The contractual language made the basis of this suit is identical in each financing agreement. The claims and defenses are virtually the same. Without mandatory certification, Deere may have to defend the identical suit numerous times. When the repeated litigation of common issues would be grossly inefficient, generate exorbitant costs or waste judicial resources, Texas law allows mandatory class certification. *See Adams*, 791 S.W.2d at 292–93. The trial court found the situation here analogous to that in *Adams* and certified a mandatory class, following "the better Texas rule." Unlike a complex tort case with different factual issues concerning causation and damages, this case involves identical language in financing agreements. Appellants are not seeking compensatory damages for injuries sustained, but instead seek damages in the form of statutory penalties. To the extent appellants may be entitled to penalties, the difference in their claims are ones of mathematical computation only. We recognize the trial court's discretion is not without limit and it must act within the parameters of the law, but we find in this case, the court did not act without considering the law. The court had before it the memorandum of authorities supporting Deere's motion for class certification, as well as appellants' response and memorandum of authorities, both of which provided a thorough discussion of the relevant case law. At the hearing, numerous

exhibits were admitted, including copies of the motions, memoranda of authorities and order in *Durrett,* and copies of pleadings in other suits against Deere. In view of the evidence and authorities before the court, we cannot say it acted arbitrarily or unreasonably.

While this court might have decided the issues differently, we cannot say the trial court acted without reference to any guiding principles. Finding no clear abuse of discretion, we affirm the trial court's order of mandatory class certification.